## J. A. SLOAN v. J. L. KING.

Decided November 18, 1903.

**1.—Limitation—Charge—Omission.**

A charge properly presenting the defense of limitation, but not directly instructing to find for defendant if the facts were found in his favor, can not be complained of by him for that defect in the absence of a requested instruction supplying the omission.

**2.—Limitation—Evidence—Possession.**

Evidence in support of limitation in a suit for land considered, and held too unsatisfactory on the subject of defendant's actual possession to require the reversal of a judgment against him.

**3.—Innocent Purchaser—Agreement.**

An agreement, on trial of a boundary case, admitting title in the respective parties to the land called for in their deeds "except in so far as the same may be defeated by the agreed boundary line" or by limitation, would seem to preclude one of them from avoiding the effect of the agreed boundary by the plea of innocent purchaser.

**4.—Innocent Purchaser.**

Evidence in support of a claim to defeat the effect of an agreed boundary line on the defense of innocent purchase considered, and held insufficient to require reversal, defendant showing no payment of value save from the recitals in his deed, and the proof being sufficient to sustain finding that he bought with actual or implied notice.

**5.—Boundary—Agreement.**

An agreement, in a boundary suit, admitting that the parties had title to their respective lands, as described in their deeds respectively, except in so far as the same might be defeated by the agreed boundary line, etc., did not eliminate the issue of boundary nor preclude the introduction of evidence to identify the actual boundaries called for in their respective deeds.

**6.—Former Appeal—Change in Proof.**

The state of the evidence herein distinguished from that on the former appeal and held to show the case not concluded by the opinion therein.

**7.—Boundaries—Evidence—Calls.**

Parol evidence is not admissible to alter the calls given in the description of land in a conveyance, but is, to identify the land by such calls, explain discrepancies arising from their application to the land and show which is correct and which mistaken where they conflict; and in so doing calls for course and distance may prevail over those for natural or artificial landmarks where it is made to appear that the latter were called for by mistake, and this under the general issue, without resort to action in equity to correct the instrument.

Appeal from the District Court of San Saba. Tried below before Hon. Clarence Martin.

*Rector & Brown,* for appellant.

*P. M. Faver* and *W. M. Allison,* for appellee.

FISHER, CHIEF JUSTICE.—This is a suit brought by the appellee King against the appellant Sloan to establish the boundary line between them of the lands respectfully owned by each of the parties. Verdict and judgment below were rendered in favor of the plaintiff,

establishing the line in controversy in accord with his theory as set out and described in his petition.

Plaintiff in his petition alleges that prior to the year 1862, William Thaxton was the owner in fee simple of a tract of land situated on the south bank of the San Saba River, known as survey No. 64, patented to the heirs of F. Eggers; that in said year of 1862 Thaxton conveyed 45 acres, including other lands, off of the north end of said F. Eggers survey to J. W. King, the father of this plaintiff, which 45 acres was subsequently conveyed by J. W. King to plaintiff; that afterwards, William Thaxton conveyed the residue of the Eggers tract to Banty and Hoover, being the south part of the Eggers survey 64; that the boundary lines of these divisions begin at a stone mound on the bank of the San Saba River, from which a live oak bears; thence south 77 east 200 varas to a stone mound, from which a mesquite bears north 11 west 7 varas; thence north 57 east 975 varas to a stake in the east line of survey 64, from which a mesquite bears north 11 west 7 varas; that this line has well defined bearings, and is marked and identified on the ground; that there are some discrepancies in the matter of description in the deed from Thaxton to King and to Banty and Hoover, and that while the land was owned by King, Banty and Hoover, the line as above described was agreed upon by said parties as the boundary line between their several tracts; that said agreed line was thereafter acted upon and recognized by the parties as the dividing line of the land that each respectively bought from Thaxton.

It appears that after the line was agreed upon, Hoover and Banty conveyed to one Flemming, who thereafter conveyed to the appellant Sloan.

Sloan in his answer pleaded not guilty and denied the agreed boundary, and alleged that he was a purchaser in good faith, without notice of such agreed line, and that he claimed the land in controversy by virtue of the three, five and ten years statutes of limitations; and in effect, claimed that the true line between his land and King's should commence at the stone mound 200 varas from the river, and from thence run north 40 east to the northeast corner of survey 64, instead of north 57 east to a stake in the east line of survey 64, as claimed by the plaintiff.

On the question of boundary, the real controversy between the parties is whether the evidence shows an agreed boundary, or whether the dividing line between them should be established from the stone mound corner 200 varas from the river on a course north 57 east to a stake in the east line of survey 64, from which a mesquite bears north 11 west 7 varas, as contended by plaintiff; or, as contended by the defendant, the line should run from the 200 vara stone mound corner from the river, north 40 east to the northwest corner of survey 64.

The facts show that William Thaxton was common source. The field notes of the deed from Thaxton to King, so far as they relate to the line in controversy, call to run north 57 east from the 200 vara

stone mound corner from the river, 957 varas to a stake in the south line of survey No. 65, set for the northeast corner of No. 64, from which a mesquite bears south 60 east 6 varas. The deed from King to Hoover calls to run from the corner 200 varas from the river, north 57 east, to the place of beginning. The beginning call in the deed to Hoover calls to commence at the northeast corner of survey 64, at a stone mound from which a mesquite bears north 11 varas.

There is evidence to the effect that when Thaxton sold to King he went upon the ground and surveyed the line, and, to some extent, marked the same on the course running north 57 east from the corner 200 varas from the river to a point on the east line of survey 64; and there is some evidence in the record indicating that he there established the stone mound identified by the mesquite bearing tree, which is called for as north 11 west 7 varas. The evidence in the record tends to show that he did not run the line on the course contended for by the defendant, and did not establish the corner of the land conveyed to King and Hoover at the northeast corner of survey 64. The evidence warrants the conclusion by the jury that he never ran that line nor established that corner, but that he did in fact run and establish the dividing lines between him and King on the course north 57 east; and there is evidence of his footsteps found upon the ground, tending to show that there was where he actually established the line. Evidently the confusion in the call in the field notes in the conveyance from Thaxton to King and from Thaxton to Hoover, suggested to these parties the propriety of establishing by agreement the line between them. And we find as a fact that while King and Hoover were the owners of the land, they did agree upon the line as claimed by the plaintiff, and that such agreement was acted upon. The line so agreed upon is practically and almost identically the same line that was established by Thaxton running on the course north 57 east from the corner 200 varas from the river.

The court in its charge submitted to the jury the question as to the existence of the agreed line, and authorized them to determine the boundary line in question, independent of the agreement, submitting to them the usual rules for the ascertainment and establishment of boundaries, and submitted the defense of limitation and innocent purchaser.

It is contended by appellant that the court's charge was not full enough upon the subject of limitation; that the jury should have been directed in so many words to return a verdict in favor of the defendant, if they found for him on the issue of limitation. The charge of the court upon this subject did practically present this issue to the jury, and if the charge was not as full as wished by the appellant, an additional instruction should have been asked, which was not done.

It is also contended by the appellant that the defense of limitation was established. There is some evidence in the record tending to establish this issue in favor of the defendant, but we can not say from an

inspection of the testimony bearing upon this subject that it was sufficient to satisfy the jury and court that the defendant, or his vendor Flemming, was in actual possession of the land in controversy. There is a confusion and uncertainty in the evidence upon this subject, and we are inclined to the opinion that the jury had the right to reach the conclusion that the defendant had not, by satisfactory evidence, established the fact that he and his vendor Flemming were in possession of the land in controversy for the length of time required by law. The burden was upon the defendant to establish this issue, and in the confused condition of the testimony upon the subject, the jury were well authorized to reach the conclusion that the evidence of possession was not satisfactory.

It is next contended by the appellant that he was entitled to a verdict and judgment on the issue of purchaser in good faith, it being contended that when he purchased the land he did so without notice of the agreed boundary. The record contains this admission: "It was admitted by each party hereto that the parties have title to their respective lands, as described in their deeds respectively, except in so far as the same may be defeated by the agreed boundary line alleged by plaintiff to have been established and agreed on by and between plaintiff's father and vendor, J. W. King, and defendant's remote vendor, G. W. Hoover; and except in so far as the land in controversy up to the line described in defendant's title deeds may be recovered under the three or five or ten years plea of limitation."

According to our view, this agreement eliminates the defense of innocent purchaser. But if we are mistaken in our construction of this agreement as to the issues involved in the case, then we are clearly of the opinion that the evidence did not authorize a verdict in favor of the appellant upon this issue. It does not appear from the evidence, independent of the recitals contained in appellant's deed, that he paid a valuable consideration for the land; but if it could be conceded that he did, it is clear from the facts that he is chargeable with notice of the existence of the line contended for by appellee. The agreed line which is contended for by appellee is practically located along the same line running north 57 east, which line was marked and identified, according to the evidence in the case. This agreed line is consistent with the established line called for in the field notes. If the testimony of the plaintiff's witnesses is to be believed, the evidences of identity of the existence of this line are so well fixed that the subsequent purchaser from one of the parties would be charged with notice of its existence; or, in other words, the jury were authorized to reach the conclusion, in passing upon the issue of innocent purchaser, that the line called for was so prominent that Sloan, the subsequent purchaser, must have known of its existence, or could have ascertained it by the exercise of a reasonable effort to do so. As said before, the court did submit the issue to the jury of innocent purchaser, and we are of the opinion that the

evidence was sufficient to authorize the verdict of the jury against appellant upon this question.

It is contended by appellant that the question of boundary, that is, as to the existence of the true dividing line between King and Hoover as established by the calls in the field notes, was eliminated by virtue of the agreement, and that, therefore, the court should not have instructed on the subject of boundary. It is also contended, that, according to the previous decision of this court on the former appeal of this case, the court erred in submitting the plaintiff's theory as to the boundary and dividing line between him and defendant, because the line should be established running from the 200 varas corner from the river, north 40 east, to the northeast corner of survey No. 64.

Doubtless when the case was here before, and when we applied the doctrine announced in Anderson v. Stamps, 19 Texas, we were laboring under the impression that the northeast corner of 64 was indubitably established, and that the evidence of the footsteps of the surveyor did not indicate that he went to a different place, such as is shown to be the case in the evidence before us in this record. In our opinion, the evidence does not clearly establish the existence of the northeast corner of survey 64; but there is no dispute or controversy about the existence of the corner 200 varas from the river, and from that corner there is a call in the deed to King running north 57 east, which is corroborated and identified, to some extent, by a marked line made by Thaxton on that course when that call was made. We do not place the same construction upon the agreement which has just been stated, limiting the issues to be submitted by the trial court, as contended for by the appellant. In our opinion, the question of boundary, under that agreement, was still in the case, and it was a proper issue for the court to submit to the jury. The agreement states that "it is admitted that the parties have title to their respective lands described in their deeds, except in so far as the same may be defeated by agreed boundary," etc. We do not understand this to mean that either party would be precluded from offering testimony tending to show the real boundaries of the lands conveyed by Thaxton. Therefore, we are of the opinion that it was proper for the trial court to submit the question of boundary to the jury.

Anderson v. Stamps, 19 Texas, 464; Donald v. Reese, 84 Texas, 653, and Coleman County v. Stewart, 65 S. W. Rep., 385, and like cases announce the correct doctrine that the calls in the field notes of a survey can not be controlled by parol evidence of the existence of objects which are not called for; that the boundaries are to be determined and ascertained from some of the calls of the grant, and that parol evidence, except in actions to correct mistake, is not admissible to correct a call. But this rule does not apply when the evidence of extraneous facts and surrounding circumstances is simply in aid of a call found in the field notes, when the purpose is by such evidence to remove an ambiguity and to determine which of two or more conflicting calls

shall prevail. This is made apparent in the cases of Booth v. Upshur, 26 Texas, 71, and Duran v. Presberry, 25 Texas, 517, where in each case Anderson v. Stamps is explained. The uncertainty or ambiguity in the calls of the deed from Thaxton to King and from Thaxton to Hoover did not arise upon the face of these instruments, but arises when the effort is made to apply them to the land intended to be conveyed. In applying the calls contained in these deeds, it is found that the calls for the northeast corner of survey 64 conflicts with the call for course and distance 975 varas north 57 east from the known corner 200 varas from the river. The jury adopted the last call as the correct and controlling one, acting evidently upon the theory that the call for the northeast corner of survey 64 was a mistake, and we have no doubt as to the correctness of this conclusion.

There is no evidence, as said before, that Thaxton, in locating and surveying the land intended to be conveyed, ever ran the line from the corner 200 varas from the river on the course north 40 east to the northeast corner of survey 64, and there established a corner, as contended for by appellant. But there is evidence to the effect that from the corner 200 varas from the river he ran a line and marked the same on the course north 57 east, and established a corner on the east line of survey 64; and, such being the case, we have evidence of his footsteps which is consistent with the call in the grant, and which may be considered as evidence identifying this call, and giving to it a superiority over the call for the northeast corner of survey 64. Oliver v. Mahoney, 61 Texas, 612.

In the case of Johnson v. Archibald, 78 Texas, 102, the present Chief Justice of the Supreme Court uses this language: "If the calls in a grant when applied to the land correspond with each other, parol evidence is not admissible to vary them by showing that in point of fact they are not the calls of the survey as actually made, but if when so applied they disclose a latent ambiguity, that is to say, if they conflict with each other, then extrinsic evidence may be resorted to, in order to determine the conflict and show the land actually intended to be embraced by the calls of the survey. Certain calls, such as for natural objects, marked lines and corners, being less likely the result of mistake, in the absence of other evidence, prevail over calls for course and distance. But the survey actually made is, in legal contemplation, the true survey, and it is always competent to show by any legal evidence where the lines were in fact found upon the ground. It follows, therefore, that whenever the evidence is sufficient to induce the belief that the mistake is in the call for the natural or artificial objects and not in the call for course and distance, the latter will prevail and the former will be disregarded." This doctrine is recognized in Gregg v. Hill, 82 Texas, 409; Boone v. Hunter, 62 Texas, 588; Booth v. Upshur, 26 Texas, 65; Duff v. Moore, 68 Texas, 271; Lilly v. Blum, 70 Texas, 710; Oliver v. Mahoney, 81 Texas, 612; Jones v. Andrews, 62 Texas, 660; Jones v. Burkett, 46 Texas, 291; Shelton v. Boone, 26

S: W: Rep., 225; Burke v. Manghum, 37 S. W. Rep., 459; Robertson v. Doss, 53 Texas, 506; Castleman v. Pouton, 51 Texas, 87; Hubert v. Bartlett, 9 Texas, 103; Bigham v. McDonald, 69 Texas, 106; Aransas Pass Colonization Co. v. Flippan, 29 S. W. Rep., 813; Arambula v. Sullivan, 80 Texas, 618, and Green v. Burns, 29 S. W. Rep., 547.

In many of the cases cited, course and distance was made to prevail over objects found upon the ground, as called for in the field notes. This upon the theory, as so frequently stated in some of the cases, that when the facts and surrounding circumstances indicate that course and distance is the most reliable of the two calls, and that the call for the object was by a mistake, that the latter will be made to yield to the former.

The suggestion is made by the appellant that in an action merely to establish boundary or in trespass to try title, an uncertainty or ambiguity can not be removed or the fact of a mistake corrected; that an equitable action to correct the mistake is necessary in order for the court to inquire into it. This position is not tenable. Nearly all the cases cited were actions of trespass to try title, in which no element of mistake was pleaded, and there the correction was permitted; or, in other words, the jury were authorized from the facts proven to reach the conclusion that a mistake was made in one of the calls. But we regard the question as definitely settled in this State. In Coffee v. Hendricks, 66 Texas, 677, which was an action of trespass to try title, the court on the last page of the opinion says: "The admission of the testimony of the surveyor is complained of in the seventh assignment of error. This testimony was merely to the fact that the field notes in the deed from Davis to Roberts, if corrected, so as to read north 4 west, instead of north 40 west, would embrace the land in controversy. With that deed in evidence the testimony, we think, was admissible."

It was also held in Williamson v. Simpson, 16 Texas, 442; Berry v. Wright, 14 Texas, 273; Loving v. Corcoran, 26 Texas, 93; Urequhart v. Burleson, 6 Texas, 513; Hughes v. Sandal, 26 Texas, 164, which were actions of trespass to try title, that mistakes in the calls could be corrected.

In the case of Arambould v: Sullivan, supra, which was an action of trespass to try title, evidence was offered for the purpose of showing that there was a mistake in the deed in the call for certain lots and their width. The court held the evidence admissible, and said: "The evidence was intended, we presume, not to reform or correct the deed, but to aid in rightly interpreting the descriptions. The object was, or should have been, to ascertain the intention or understanding of the parties at the time of the execution of the deed, as well as the true meaning of the description of the premises therein, read in the light of the surrounding circumstances, as they really existed at the time. Any facts consistent with either of the descriptions contained in the deed that would show or tend to show that intention, or what land or how much was intended to be conveyed, would seem to be relevant to

the issue in case of a latent ambiguity like the present, where the descriptions, though not uncertain on the face of the deeds, became so when attempted to be applied to the land conveyed, as it really existed at the time. Sikes v. Shows, 74 Ala., 382; Truett v. Adams, 66 Cal., 218."

This court in the case of Green v. Burns, 29 S. W. Rep., 548, which was an action of trespass to try title, and where it was expressly contended that in such an action the mistake or error could not be shown, said: "An ambiguity such as this may be explained or removed in actions of trespass to try title without being pleaded or without the aid of a court of equity, based upon pleading raising the issue;" and in addition to the authorities already noticed, we cited Kingston v. Pickens, 46 Texas, 101, where the rule is clearly stated, and Cox v. Hart, 145 U. S., 377.

The verdict of the jury and the judgment of the court established the line running on the course north 57 east to the northwest corner of the J. W. Flemming pre-emption, and the judgment is to the effect that the appellee King recover all of the Eggers survey 64 lying north and west of the line as above described. In view of the line asserted by the plaintiff in his petition, and the verdict of the jury and the judgment of the court in describing the land which the plaintiff should recover, we do not consider that it is necessary that we should express our views as to what rule should govern, in order to close the survey; but if it were necessary to pass upon this subject, we think the rule furnished in the case of George v. Thomas, 16 Texas, 88, would authorize the marked line to be prolonged on a course and distance running from the northeast corner established by the verdict of the jury, to the northeast corner of survey No. 64, in order to close the survey.

We have considered all the questions raised in appellant's assignments, and think that none are well taken.

The judgment is affirmed.

*Affirmed.*