## GILBERT v. FINBERG et al.

(Court of Civil Appeals of Texas. San Antonio. March 26, 1913. On Motion for Rehearing, April 30, 1913.)

1. EVIDENCE (§ 460*)—AMBIGUOUS SURVEYS—EXPLANATION BY EXTRINSIC EVIDENCE.

Where the field notes show a latent ambiguity when it is sought to apply the calls to the land, making it necessary to disregard either the north course or the east line of the survey, extrinsic evidence is admissible to show what land was intended to be embraced within the survey.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

2. BOUNDARIES (§ 3*)—CALLS—SUPERIORITY.

Rules relating to the comparative dignity of calls are designed to aid in determining which calls of a survey were made by mistake, but the rules relating to actual surveys are frequently not applicable to office surveys.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

3. BOUNDARIES (§ 36*) — SURVEYS — FIELD NOTES SKETCH.

In determining which call in the field notes of the survey was made by mistake, a sketch attached to the field notes, as well as the field notes of the entire block, of which the survey by description and by the sketch constitutes a part, may be considered.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 160–162, 164, 166–176; Dec. Dig. § 36.*]

4. BOUNDARIES (§ 37*)—SUFFICIENCY OF EVIDENCE—LOCATION OF SURVEYS.

Evidence in trespass to try title *held* to show that the survey in controversy was located as claimed by plaintiff, showing that the first call of the field notes "along line of" a certain survey was inadvertent.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

### On Motion for Rehearing.

5. EVIDENCE (§ 108*) — INTENTION OF WITNESS.

The knowledge of the person making calls in field notes of a survey as to the facts in connection with the survey is admissible in determining the meaning of the language used in the field notes; such evidence not constituting a statement of his intentions.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 202–212; Dec. Dig. § 108.*]

Appeal from District Court, Uvalde County; R. H. Burney, Judge.

Action by Mrs. Kate L. Gilbert against Mrs. George Finberg and others in which defendants filed a cross-action. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

See, also, 141 S. W. 82.

Webb & Goeth, of San Antonio, and Love & Williams, of Uvalde, for appellant. G. B. Fenley and Martin, Old & Martin, all of Uvalde, and Clark & Bliss, of San Antonio, for appellees.

MOURSUND, J. Appellant sued appellees in the district court of Edwards county in trespass to try title to recover 640 acres of land in said county known as survey 71, block 3, of the Texas, Western & Narrow Gauge Railway Company's lands, describing the same as follows: Beginning at the northwest corner of survey No. 70; thence south 1,900 varas to stake; thence west 1,900 varas to stake; thence north 1,900 varas to stake; thence east 1,900 varas to stake. And also describing the same by giving the boundaries according to an actual survey, in which the corners were marked on the ground. Appellees disclaimed title to a parcel of land described by field notes, containing 56 acres, and as to the remaining portion they pleaded a general denial and not guilty, also statutes of limitation of three, five, and ten years, and by cross-action sought to recover all of the land sued for except the 56 acres disclaimed, and further sought to recover 160 acres out of survey No. 71; such cross-action being based upon the statutes of limitation. Appellant, by supplemental answer, pleaded not guilty to the claims of appellees under their cross-action. The verdict being in favor of appellees, judgment was entered that appellant take nothing by her suit except the 56 acres to which title was disclaimed by appellees, from which judgment this appeal was taken. The opinion of this court upon the former appeal of this case is reported in 124 S. W. 980, and by the Supreme Court in 141 S. W. 82.

### Findings of Fact.

An agreement of counsel was filed containing the following provisions:

"First. That survey No. 71, S. P. Ry. Co. lands, fronting on the east bank of the Nueces river, in Edwards county, Tex., is properly and definitely located by its calls for natural and artificial landmarks, as given in the original field notes now in evidence, by running its south boundary line from the river on a line running S. 85° E. the distance called for, its east boundary line by running from its southeast corner N. 5° E. the distance called for, its north boundary line from its northeast corner N. 85° W. to the river, and then down the river with its meanders to place of beginning; said lines being run by the compass by allowing a variation of the needle from magnetic north, 9° 15', and that said lines will thus retrace the lines of the original survey.

"Second. It is further agreed that beginning the survey No. 1, block 3, T. W. N. G. Ry. Co. lands, at the southeast corner of said S. P. survey No. 71, and allowing the same variation of the needle, and then running the course of the east boundary lines of said S. P. survey No. 71, to wit, N. 5° E. the distance of 1,900 varas, and then running the north boundary line section 1, block 3, S. 85° E. at right angles to its first line, then its east boundary line S. 5° W. at right angles to its second line and parallel with its west line, then its south boundary line N. 85° W.

on a line parallel with its north line, 1,900 varas, to place of beginning, and then by constructing the remaining sections of said block 3, from section 2 to 80, inclusive, in harmony with foregoing described courses—that is all west lines N. 5° E., all north lines S. 85° E., all east lines S. 5° W., and all south lines N. 85° W.—then the lines and boundaries of sections 68 and 71 of said block 3 will be located as claimed by the defendants, and, if so located, plaintiff will not be entitled to recover any of the lands described in her petition, except the 56 acres disclaimed by defendants.

"Third. It is further agreed that if in constructing section 1, of block 3, T. W. N. G. Ry. Co. lands, it is begun at the said southeast corner of section No. 71, S. P. Ry. Co. lands, and thence run its first or west line north, allowing a variation of the needle of 9° 15' from magnetic north 1,900 varas, then run its north boundary line east, at right angles with its west line, 1,900 varas, and then south, 1,900 varas, and then west 1,900 varas to place of beginning, allowing at all times the same variation of the needle, and, using the same variation of the needle, construct the remaining sections of block 3, from section 2 to 80, inclusive, and tying same to said section 1, and running their lines north, east, south, and west, respectively, then sections 68 and 71, of said block 3, will be located as claimed by plaintiff, and if so located by the evidence, plaintiff is entitled to recover the land described in her petition, unless defeated by limitation.

"Fourth. It is further agreed that the variation of the compass needle of 9° 15' on which the lands in controversy were actually located on the ground by recent surveys, and used in locating said lands according to both theories or plans hereinbefore outlined, was the true and correct variation of the needle.

"Fifth. It is agreed that either party may offer any other admissible evidence, to be considered upon any and all issues between the parties."

The N. E. and S. E. corners of survey No. 71 S. P. R. R. Co., according to the field notes, are evidenced by a stake and mound only, and to locate the same and the east line of the survey it is necessary to run the lines as stated in the above agreement. All of the 80 surveys in block 3 T. W. N. G. Ry. Co. are office surveys, made January 8, 1876, by Dennis Corwin, deputy surveyor of Bexar district, who up to the time he testified in this case had never been on the ground where these surveys are located, and who did not survey the east boundary line of survey No. 71 S. P. R. R. Co., and who, in explanation of his work and in answer to a question calling his attention to the fact that the east line of said survey 71 S. P. R. R. Co. ran north 5° east, testified as follows: "The deflection of five degrees from the cardinal points, or from the north and south,

escaped my observation. I certainly did not take notice of the fact that the S. P. R. R. Co. survey lines deflected five degrees from the north, south, east, and west course, because that fact was not known to me." Corwin testified he was a land surveyor and civil engineer; that he began practical surveying in 1854, was elected district surveyor of Travis land district in 1859, and resigned in 1861 to enter the army, was afterwards deputy district surveyor of Young, Milam, Bexar, Palo Pinto, and Jack land districts. A certified copy from the General Land Office of the field notes of survey No. 1 in said block 3 was introduced in evidence; the calls contained therein being as follows: "Beginning at the S. E. cor. of Sur. No. 71, in name of S. P. R. R. Co. Thence N. 1900 vrs. along line of said Sur. to stake. Thence E. 1900 vrs. to stk. for cor. Thence S. 1900 vrs. to stk. for cor. Thence W. 1900 vrs. to beginning." To this copy of field notes is attached a copy of a plat of said block 3, with an arrow thereon indicating the meridian, and while the same is upon the scale of only a half inch to the mile, yet it is clearly apparent therefrom that the lines of said block as shown on said plat run north and south and east and west, and do not correspond in course with the north and south lines of the surveys of S. P. R. R. Co. block shown on said sketch, which vary five degrees from an east and west course. The east line of survey 71 S. P. R. R. Co. is depicted as corresponding to the extent of its length with the west line of survey No. 1, block 3, and plainly does not run at right angles with the north and south lines of said survey 71 S. P. R. R. Co. In fact, the east lines of all the S. P. R. R. Co. surveys on this sketch appear to run north and south. Survey No. 72 S. P. Ry. Co. is depicted as south of survey No. 71, and as not extending so far east as No. 71, while in fact the field notes place it north of No. 71, and extending 67 varas further east than No. 71. The same error occurs in the sketch with reference to surveys 69 and 70, 63 and 64, and 77 and 78.

The plat of the 50 S. P. R. R. Co. surveys made by H. R. Biberstein shows Bull Head creek crossing the S. E. corner of survey 63, while the sketch places it about a half mile further south, and the sketch also places Cedar creek about a mile further north than it appears on Biberstein's plat. The Corwin sketch contains only that portion of the S. P. R. R. Co. block located by Biberstein which lies east of the east prong of the Nueces, and when so taken alone such surveys do not show as plainly the deflection of five degrees as is shown on the Biberstein plat, on which he has the meridian running through the portion of the block situated on the middle prong of the Nueces, in which portion most of the surveys are located on a due east and west course. The difference between the east and west lines of the sur-

veys located on the middle prong and those on the east prong is very marked; but, the lines running north and south being short, the difference is hardly noticeable. Survey No. 2, block 3, begins at the N. E. corner of No. 1, running east 1,900 varas, then south, west, and north, each call being for 1,900 varas. Surveys 3 to 80 same block in their consecutive order tied to the preceding survey, with all lines 1,900 varas, the courses east, south, west, and north, with no calls for any object, natural or artificial, on the ground, except the first call in the field notes of No. 80, which reads: "Beginning at S. E. corner Sur. 79; thence S. cross creek 1900 vrs. to stk." This circumstance is given no weight by either party, and probably occurred because the sketch places survey 80 on Cedar creek as it is erroneously indicated on said sketch.

The Biberstein plat of the 50 S. P. R. R. Co. surveys was filed in the General Land Office August 3, 1874. Survey 71 S. P. R. R. Co. was patented February 7, 1881. Sections 1 and 71, block 3, were patented April 8, 1876. Section 68, block 3, was patented July 5, 1888. The locative calls contained in the patents correspond with those of the field notes hereinbefore stated.

A copy of the map of Edwards county used in the General Land Office prior to 1883 is in evidence, which indicates clearly that the east and west lines of block 3 are not considered to be upon the same course as the east and west lines of the S. P. R. R. Co. block, and indicates that said block 3 was laid off so as to have its lines run north, east, south, and west. It, however, does not show where block 3 ties onto the S. P. R. R. Co. block, there being an apparent vacancy between survey No. 1, block 3, and surveys 72 and 77 S. P. R. R. Co., and the S. W. corner of survey 1, block 3, being opposite the S. E. corner of survey No. 72 S. P. R. R. Co., and approximately 950 varas north of the S. E. corner of survey No. 71 S. P. R. R. Co.

A copy of the map used in the General Land Office, dated March, 1883, is also in evidence, which indicates by dotted lines a slight conflict between survey No. 1, block 3, and surveys 71 and 72 S. P. R. R. Co., and shows clearly that the lines of block 3 are not considered as running on the same course as those of the S. P. R. R. Co. block, but as running according to the calls of the field notes.

Appellees' witness Gray, a surveyor, being shown the sketch attached to field notes of survey No. 1, block 3 (called the Corwin sketch), testified it was on the scale of about one-half inch to the mile; that on such a scale the difference between lines running astronomically north and those running 5 degrees east of north would not be much to the ordinary eye; he thought it could not be detected; that it would not make much difference on a few sections,

but the further you got away from your beginning point the greater the difference. Upon cross-examination he was shown another map, but the record does not disclose what map, and it is difficult to arrive at what he did testify concerning same.

Five degrees difference in course will make a difference of 165 varas in a mile. Survey No. 1, in block 3, is the N. W. corner of the block, which runs east 10 miles and south 8 miles, and on the "Corwin sketch" is depicted as a square with the exception of survey No. 80, which falls below the 8-mile tier of surveys because the sixth tier contains only 9 surveys, one being omitted on the west evidently for fear of a conflict, as an S. P. R. R. Co. survey is shown on such sketch to extend east so as to conflict with block 3 if the sixth tier was filled out. On the map used in the Land Office prior to 1883, block 3 is given the same shape as in the Corwin sketch. On the map dated March 1883, survey No. 21 in the third tier, instead of being south of No. 20, is south of No. 19, and from then on the block extends a mile further east than in the Corwin sketch; but the section at the west end of the sixth tier is left vacant as in the Corwin sketch, dropping survey 60 to the next tier of surveys. It follows that upon the Land Office map of 1883 surveys 68 and 71, the location of which is involved in this suit, are located a mile east of their location as indicated by the "Corwin sketch." No explanation of this is made, nor are the field notes of the block given in detail, but merely the statement that each survey ties onto its preceding one. We assume from the agreement that the field notes locate the surveys as shown by the Land Office map of 1883.

Considerable evidence was adduced by which appellees sought to show limitation, but the court held the same insufficient to raise the issue, and, no question being raised involving the correctness of such ruling, we will not make any findings in regard to such testimony.

### Opinion.

Appellant contends that the question of the location of the surveys in question, under the agreement and the evidence, was one for the court and not for the jury, and this view is also entertained by appellees as shown by their subcounter proposition to the proposition submitted by appellant under the first assignment of error. Under the agreement and the evidence, we are of the opinion that the location of the surveys in question became one for the court, and will therefore consider the question whether a verdict should have been instructed for appellant.

[1] There is nothing ambiguous on the face of the field notes of survey No. 1, block 3, but when it is sought to apply the calls to the land, they disclose a latent ambiguity;

that is, they conflict with each other, and it becomes necessary to disregard either the north course or the east line of survey No. 71 S. P. R. R. Co. In such cases in order to determine the conflict and show what land was actually intended to be embraced in the survey extrinsic evidence may be resorted to. Sloan v. King, 33 Tex. Civ. App. 537, 77 S. W. 48; Hamilton v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1097.

[2] When the S. E. corner and the east line of No. 71 S. P. R. R. Co. are located by running course and distance from its S. W. corner, and we then begin at such S. E. corner to apply the field notes of survey No. 1 to the ground, we find that it is impossible to run with the east line of said survey No. 71, and at the same time to run north, because such east line runs N. 5° E. and the divergence between the two lines at the end of 1,900 varas is 165 varas. As the two calls lead to different results, one or the other was inserted by mistake, and the one inserted by mistake should be disregarded. All rules relating to the comparative dignity of calls are designed to aid in determining which call or calls of a survey were made by mistake; but in passing upon an office survey, where there are no footsteps of the surveyor to follow, the rules relating to actual surveys are frequently not applicable.

In the case of Boon v. Hunter, 62 Tex. 588, the court said: "It is, however, not believed that the same rules in regard to the lines or corners of other surveys called for in a patent can be applied, when it clearly appears that no actual survey was ever made, and in such case it becomes necessary to look to all matters of description contained in the patent, in order to determine what particular land was conveyed and intended by the state and the grantee to be conveyed by the patent. If, in such a case, from a consideration of all these, in connection with the facts surrounding the parties, and the transactions to which the parties looked at the time the patent was issued, the thing granted can be with certainty identified, then the grant ought not to be held void; but such matters of description as were evidently given by mistake should be disregarded, and effect given to the calls which are certain and are found, which, in connection with others matters of description contained in the grant, will make it conform to the evident intention of the parties."

Again, in the case of Sloan v. King, supra, the court, citing many cases in support of its statement, said: "It follows, therefore, that whenever the evidence is sufficient to induce the belief that the mistake is in the call for the natural or artificial objects and not in the call for course and distance, the latter will prevail, and the former will be disregarded."

[3] In passing upon the question of which call in this case was made by mistake or inadvertence, it is, of course, proper to con-sider the sketch attached to the field notes of survey No. 1, as well as the field notes of the entire block of which survey No. 1, both by description and by the sketch, constitutes a portion. We have here a block of 80 surveys platted upon the sketch which beyond a doubt indicates the lines as running in accordance with the cardinal points of the compass, the field notes of said block containing 320 calls, all of which are either for north, east, south, or west. This block runs east 10 miles, and it is in evidence that a divergence of five degrees between two lines makes a difference of 165 varas between the two lines for each mile traversed, so that in laying out this block, if all courses were changed to read 5 degrees variant from the cardinal points, the S. E. corner of the tenth section would be 1,650 varas distant from where it would be located if the line is run east. Certainly no surveyor of 22 years' experience could intend to appropriate and have patented land not described by him in his field notes, and to locate which something would have to be read into each patent. On the other hand, it is contended that the surveyor intended the west line of survey No. 1 to run with the east line of survey No. 71, as shown by his field notes, and that he did not intend to appropriate any land lying west of said line. It is safe to assume that a surveyor never deliberately or intentionally locates a survey so as to conflict with a prior survey unless he believes the former location to be invalid. These conflicts usually occur by mistake or inadvertence, and in this case it appears that the surveyor was very careless in using a defective plat of a portion of the S. P. R. R. Co. survey as a basis for his work, and it further appears reasonable that such plat was not made from the field notes as, in addition to the mistakes in the numbers of the surveys, it also has the location of the two creeks essentially wrong. It is likely it was carelessly copied from the Biberstein plat or some other map. Having such basis, showing survey 71 to extend further from the river than 72, he adopted the S. E. corner of No. 71 as his beginning point, oblivious, doubtless, of the fact that by so doing his survey would conflict with survey No. 72, even if a conflict were avoided with No. 71. It appears that he not only had failed to prepare himself with the necessary data for accurate work, but that he did not have in mind the fact that the east line of No. 71 S. P. R. R. Co. ran N. 5° E., or he would not have called to run his lines north, east, south, and west. With careless or hasty work it was much easier to overlook the course of such east line than to make a mistake of five degrees in the courses of 320 lines. We think the evidence conclusively shows, even without his testimony to that effect, that at the time he did this work he did not know that the east line of No. 71 S. P. R. R. Co. ran N. 5° E. While he had op-

portunity to know such fact and should have known it, yet he undoubtedly did not know it, or he would not have made his field notes read as they do, nor made his sketch as he did. No surveyor would regard a difference of five degrees in course as too inconsequent to mention. In fact, the course is of necessity accurately stated, or else the whole science of surveying would fall and interminable confusion result.

We cannot agree that the law permits this block of 80 surveys to be reconstructed upon a different course than that called for in the field notes merely because a call was made for the first line to run with an unmarked line of which it is plain the surveyor did not even know the course, but assumed it was north. For appellees to win, it becomes necessary to change each call in the 80 surveys; but if we change the first call by striking out the words "along line of said survey," the entire block can be laid out according to the calls of the field notes and patents for course and distance, leaving a slight conflict between survey No. 1 and No. 71 S. P. R. R. Co., and increasing the conflict between said survey No. 1 and survey No. 72 S. P. R. R. Co., which would exist under the other theory. This conflict amounts to very little when considered in connection with the total acreage laid out, and, while there is no evidence of conflicts caused if the block be laid out according to appellees' theory, it is safe to assume that when such block is depicted on the maps in use in the General Land Office as laid out north and south and east and west, a change as material as the one proposed would result in conflicts.

[4] We are of the opinion that the court should have instructed a verdict for appellant, and the judgment of the trial court is reversed, and judgment here rendered that plaintiff recover the land sued for by her.

Judgment reversed and rendered.

### On Motion for Rehearing.

Appellees complain of the assumption in our findings of fact that surveys Nos. 68 and 71 are located as shown by the Land Office map of 1883, which assumption was based upon the written agreement filed in the case, and related solely to the question whether these surveys are located by the field notes in the ninth or tenth tier of surveys east of the beginning point of the block. If located in the tenth tier, a change of five degrees in the course would throw the surveys further south than if in the ninth tier, and from the clause in the agreement which shows the relative positions survey No. 71 would occupy under the two theories we concluded the field notes must have placed the two surveys in the tenth tier, and therefore as depicted on the map of 1883, instead of as on the previous map and the Corwin sketch. We think it obvious from the connection in which we used the language objected to that such was our meaning, but make this statement because appellees profess a fear that we assumed from the agreement the survey lines should be run according to the cardinal points of the compass instead of with a deflection of five degrees from such cardinal points.

Appellees also infer, from our describing, in our findings of fact, the Land Office maps introduced in evidence, that we gave great weight to such maps in determining the issues in this case. The Supreme Court held these maps admissible in this case "for whatever they might be worth as throwing light on or as corroborative of the location of the land in suit as originally fixed and placed." The opinions upon the former appeal do not disclose that the question was raised whether block 3 should be laid out according to the cardinal points of the compass or by lines variant five degrees from such points; in fact, it appears that the only question was whether the evidence was sufficient to show the location of survey No. 71, and it was held that it was not sufficient because the field notes connecting it with the beginning point of the block were not introduced, but merely the maps. Such maps being held admissible by Supreme Court and being admitted in evidence, we described the same in our findings of fact, though of the opinion that as the case is made by the agreement filed herein they have no probative value "as throwing light on or as corroborative of the location of the land in suit as originally fixed and placed."

Counsel for appellees have much to say concerning the question whether "north" means according to the true meridian or according to the magnetic meridian, and say we assume that it means according to the true meridian. They have signed an agreement filed in this case, by which it is provided that the lines of survey 71 S. P. Ry. Co. are correctly located by running upon a variation of 9° 15′ E. and that the lines of block 3 are to be run upon the same variation, so far as locating surveys 68 and 71 is concerned. We are not informed whether by using the variation agreed upon they sought to locate the lines according to the true meridian, or whether they estimated that such a variation was required in order to locate the surveys where a survey according to the magnetic meridian, if made in 1876, would have placed the surveys. However, as appellees in their motion for rehearing repeatedly assume that the east line of survey No. 71 S. P. Ry. Co. is a line running five degrees east of the sidereal north, we infer that the variation was agreed upon for the purpose of running the lines on the basis of the true meridian, either in accordance with the cardinal points of the compass or variant five degrees therefrom. The discussion in regard to whether survey lines should be run according to the true meridian or the

magnetic meridian is foreign to the issue in this case. The issue as made by the agreement is whether the lines of block 3 (using a variation of 9° 15′ E.) shall be run according to the cardinal points of the compass or by courses varying five degrees from such points. Appellees' real contention is that "north" does not necessarily mean north, but may mean about north, or in a northerly direction, and that in this case in the call for the beginning line of survey No. 1, block 3, it means N. 5° E., and that each other course called for in the field notes of the block must be construed to be five degrees variant from the course actually mentioned. Several cases are referred to in support of this theory, but all are very different from this case. The case of Grace v. Walker, 95 Tex. 39, 64 S. W. 930, 65 S. W. 482, which appellees contend is virtually overruled by us, was one involving the construction of an agreement to donate land for a road. Certain landowners made a proposal for a change of road which was accepted by the city council by the adoption of an ordinance making the change and describing the road. The owners agreed to donate a strip of land 40 feet wide along the lines of their lands. The call construed by the Supreme Court read as follows: "Hence north along Kennedy's and C. D. Grace's west line to J. I. Chenowith's S. E. corner." Said line was not a true north line, and it was contended that the description in the ordinance could not be applied because a north course would pass through Grace's land instead of along his line. The court held that the call for north gave only the course which was controlled by the calls for Grace's west line and Chenowith's southeast corner.

The written descriptions in a deed are to be construed in the light of the facts known to and in the minds of the parties at the time, and with reference to any facts or monuments on the ground, which are referred to in the deed. It was apparent in said case that all the parties knew exactly where the lines were, and intended the road to run with such lines at a width of 40 feet, and that the word "north" used by the city council did not express the meaning of the parties, but was used mistakenly for the purpose of expressing the idea of a general northwardly direction. The calls for the lines expressed the true intent of the parties and controlled the call for a north course which was used mistakenly.

In this case we find the words "north," "east," "south," and "west," each used 80 times by a practical surveyor of long experience, who was preparing field notes of 80 sections of land, upon which field notes patents should issue containing as a means of identifying the land the field notes so prepared by him. It is safe to say he would not lightly use the words "north," "east," "south," and "west," in any inexact sense,

as all of his training forbade such course. He is bound to have known that a difference of five degrees in the course would make a difference of 165 varas in a mile. He calls for the west line of survey No. 1, block 3, to run north with the east line of survey No. 71 S. P. Ry. Co., which line was not located on the ground, but was to be located on a course running N. 5° E. from the S. E. corner, which was also not located on the ground, but to be located by running course and distance from the S. W. corner of survey No. 71. He had never been on the ground, but the field notes and a sketch of the S. P. Ry. Co. block were on file in the Land Office. The fact that he failed to call for the west line, survey No. 1, to run N. 5° E., in itself indicates that he overlooked the fact that the line of survey 71 was to be located by that course; but his sketch and his other calls in the field notes of the 80 surveys make it very clear that he overlooked, or did not know, that the east line of survey 71 S. P. Ry. Co. was to be located by running N. 5° E. Appellees infer, from the fact that we lay little stress upon the testimony of Corwin to the effect that he did not know of such deflection in the east line of survey No. 71 S. P. Ry. Co., that we considered such testimony inadmissible.

[5] We think the knowledge of the person making the calls in a deed or in field notes, with respect to facts having connection with his survey, is admissible as a circumstance to be considered with the other evidence in determining what he meant by language used by him, and do not agree with appellees that such testimony constitutes a statement of what he intended to do, or of what he did not intend to do. However, we think the evidence, aside from his testimony, plainly showed that at the time he made the office survey he either had not examined the field notes of survey 71 S. P. Ry. Co., or that he had not noticed or remembered the deflection in the course of the east line. The words "north," "east," "south," and "west" mean due north, east, south, and west, and when applied to courses of lines cannot be discarded or given a different meaning unless used in connection with calls for specific objects or lines, which, in view of all the facts, more certainly locate the lines in accordance with the true intent of the party using the language than the calls for course.

The survey of the 80 surveys constituting block 3 being considered as one survey, it is apparent that, by letting the courses given for all lines control the call for a portion of an unlocated line of another survey, the true intent of the surveyor will be arrived at, and that is the object to be attained. We will also say that had the east line of S. P. Ry. survey No. 1 been located on the ground and known to the surveyor, and called for by its correct course, and yet all

other calls been for the cardinal points of the compass alone, we would not feel authorized to change such other calls upon a mere presumption that the surveyor in compliance with a directory statute intended to make the surveys square.

We see no reason for changing the conclusion arrived at in our original opinion, and therefore overrule the motion for rehearing.