STARK et al. v. ADAMS et al. (No. 34.) *

(Court of Civil Appeals of Texas. Beaumont. Dec. 2, 1915. Rehearing Denied Feb. 24, 1916.)

1. BOUNDARIES ⊙⇒37—ESTABLISHMENT—SURVEYS—EVIDENCE.

In an action of trespass to try title, the controlling question was whether the S. E. corner of the C. survey, made in 1846, admitted to be on the north line of the W. survey, made in 1840, was identical with the N. E. corner of the W. survey, as claimed by plaintiffs, or 132 varas west thereof, as claimed by defendants. There were no bearing trees or marks showing that the two corners were identical, and the surveyor who located both tracts stated in the field notes of the C. survey that the line of such survey running south "intersects the north line" of the W. survey "and corners on same." The field notes showed the north line of the W. survey to be 1,344 varas from a certain point, while those of the C. survey showed the length of its south line to be 1,212 varas from that point, and called for the north line of the W. survey. No reason appeared why the north line of the W. survey as run by the original surveyor should have been short, since all other surveys near the same were junior surveys. *Held,* that the N. E. corner of the W. survey should be fixed at a point 132 varas east of the S. E. corner of C. survey, though there were no bearing trees on the N. E. corner of the W. survey as set out in the grant to same, and that hence a verdict for plaintiffs was unauthorized; the presumption being that the bearing trees were at the corner, as stated in the grant, at the time of the survey.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184-194; Dec. Dig. ⊙⇒37.]

2. BOUNDARIES ⊙⇒1 — ESTABLISHMENT — OBJECTS FOUND ON GROUND—CALLS—GRANT.

Lines and boundaries cannot be constructed with reference to objects that may be found on the ground as indicating the footsteps of the surveyor, where there are no calls in the grant for such objects.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 1; Dec. Dig. ⊙⇒1.]

Appeal from District Court, Newton County; A. E. Davis, Judge.

Action by Emma G. Adams and others against W. H. Stark and others. From judgment for plaintiffs, defendants appeal. Reversed and rendered.

Holland & Holland, of Orange, for appellants. Wightman & Hancock, of Newton, for appellees.

BROOKE, J. This is an action of trespass to try title brought by appellees against appellants to recover 160 acres undivided out of S. P. R. R. Co. survey No. 1, Newton county, Tex. Plaintiffs' claim is founded solely on the ten-year statute of limitation, they claiming occupancy for the time required, but holding under no instrument of purchase, while appellants, by the admission of the parties, own the complete record title from the sovereignty. There was a jury trial, and upon the answers of the jury to the several questions submitted to them by the court a judgment was entered in appellees' favor, and, after motion for new trial was overruled, the cause has been properly appealed.

Appellees own and have occupied continuously during the time they have claimed to occupy the land sued for a 50-acre tract of land in the northeast corner of the E. Williams survey. Their deed, under which they own this 50 acres, has during that time been of record, and describes their land as beginning at the northeast corner of the E. Williams, running thence south and west and north to the north line of the Williams, and thence east to the beginning. The deed describes the land as a part of the Williams survey. The land sued for lies immediately east of this land of appellees. The Williams survey was made in 1840. The Crooks survey, joining the Williams on the north, was made in 1846 by the same surveyor. The call for the north line of the Williams running from its northwest to its northeast corner, according to its field notes, reads:

"Thence west rich dark soil at 300 varas middle Cow creek 5 varas wide running south at 330 varas, high hammock land, timber, oak, holly, gum, pine and dogwood, at 630 varas, white oak timber at 865 varas red oak line tree with some XX timber pine, oak, dogwood, hickory at 1,344 varas, stake."

The length of this north line of Williams is 1,344 varas. The Crooks survey, made by Lewis, who surveyed the Williams, establishes its southeast corner in the north line of the Williams, and makes bearing trees and runs west with the Williams north line, passing the northwest corner of the Williams at 1,212 varas, leaving thereby the northeast corner of the Williams 132 varas east of the Crooks southeast corner. This southeast corner of the Crooks survey seems to be well identified, and now on the ground. No other point in the two surveys is located by evidence of corners and bearing trees called for in the grant.

[1] By his first assignment the appellant assails the action of the lower court in refusing the defendant's requested peremptory instruction to return a verdict for the defendants, for the following reasons:

(a) The undisputed evidence shows all occupancy and possession of the plaintiff Emma G. Adams to have been in a portion of the Erasmus Williams survey, and to no portion of S. P. R. R. Co. section No. 1 sued for.

(b) The undisputed evidence shows plaintiffs' possession proven in the case commenced in 1885, and continued until 1903, when she married one George Shankle, after which

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Application for writ of error pending in Supreme Court.

she moved from said property, and the possession of same was from said period of 1903 to 1910 jointly in said plaintiff and Shankle, who asserted a joint claim to said property, and after said period, 1910, was exclusively in the plaintiffs' possession, and the evidence fails to show any ten-year continuous occupancy and possession in the plaintiffs of the premises sued for.

(c) That the undisputed evidence showed that there is a conflict between S. P. R. R. Co. section No. 1 and Erasmus Williams; that the said Williams is a senior survey, and they claim there can be no hostile or adverse holding by an occupant holding under a recorded title of a senior survey of any portion of said junior survey, unless such possession extends beyond the conflict, and onto the junior survey, beyond the conflict, sufficient in character to amount to an ouster by an occupant of the true owner of the junior survey not in conflict with the senior.

While this is a case of trespass to try title, it is dependent primarily upon the true location of the east boundary line of the Erasmus Williams survey. The Williams survey was located in 1840, and the Samuel Crooks survey in 1846, by Lewis, who had previously located the Williams survey. A careful investigation of the testimony develops the fact that there are no bearing trees called for in the original grant to be found at the northeast corner of the Williams which are now standing. While some of the surveyors testified concerning the northeast corner of the said Williams, and as to its true location, they admitted, when tested, that the bearing trees called for in the Williams grant, together with the marks called for on said trees, were absent, and where they fixed the corner, or attempted to fix the same, the marks on the trees were admittedly made by a surveyor named Cox, in 1885, and none of the surveyors could, with certainty, show any mark or indication of the footsteps of the original surveyor made at the place where the appellants claim the northeast corner of said Williams survey to be or tending to show that it was at the point claimed by appellees. The field notes of the Wililams survey are as follows:

"Surveyed for Erasmus Williams for 320 acres of land situated on Middle creek adjoining the N. B. of William S. Cahay 320-acre tract, being the quantity of land to which he is entitled by virtue of certificate No. 111 issued by the board of land commissioners for Jasper county, beginning 125 varas from the northeast corner of said Cahay survey, stake from which a sweet gum mark G. W. bears N. 15 E. 5.6 varas and a sweet gum mark G. B. W. bears N. 25 W. 1.8 varas; thence north rich land black soil at 620 varas sweet gum line tree, at 900 varas, small branch brushy oak, pine land, dark soil at 1,344 varas, second corner, black rich land, a stake from a sweet gum mark G. W. bears S. 38 deg. 30' E. 5.6 varas sweet gum, mark G. W. bears N. 58 deg. 30' W. 19.6 varas; thence W. rich land dark soil at 300 varas middle of Cow creek 5 varas wide, runs S. at 330 varas, high hammock land, timber oak, holly, gum, pine and dogwood, at 630 varas, white oak timber at 865 varas, red oak line tree, land here some irroack timber pine, dogwood, hickory, etc., at 1,344 varas, stake from which a black gum G. W. bears S. 16 W. 8.6 varas from black gum G. W. N. 63 E. 5.6 varas; thence S. land some broken dark soil at 300 varas, small branch runs E. 450 varas, level dark soil at 800 varas, pine line tree at 1,344 varas, a stake, fourth corner, from which a sweet gum marked G. W. and W. R. bears S. 84 deg. 30' W. 11.6 varas, and a post oak marked G. W. and W. R. bears N. 70 E. 5 varas; thence E. good hammock land at 250 varas, a branch runs S. E. at 300 varas, rich land, dark soil, stiff land, at 985 varas, middle Cow creek or West creek 6 varas wide, runs S. at 1,344 varas, place of beginning; two-thirds of this survey is good land, the remg. land one-third second grade land, surveyed June 27, 1840.        M. B. Lewis, Practical Surveyor.
"James King. Sidney Wortham, C. B."

The field notes were filed in the land office July 7, 1840. Six years later Lewis, the surveyor, surveyed the Samuel Crooks land on the north, and the field notes of the Crooks were as follows:

"State of Texas, County of Jasper.

"Survey for William F. Cahay, assignee of Samuel Crooks, 320 acres of land situated on waters of Big Cow creek and adjoining the N. boundary of Erasmus Williams, being the quantity of land to which he is entitled by virtue of a land warrant No. 3933, issued by Secretary of War, dated Houston, 25th day of June, 1838, beginning at a post 260 varas west from the northwest corner of said Williams, from which a red oak mark X bears N. 67 deg. 30' E. 8 varas and a post oak marked X bears N. 48 W. 13.2 varas; thence N. at 1,200 varas post oak from which an ash marked X. bears S. 24 E. 5.2 varas and a red oak marked X bears N. 52 W. 7.8 varas; thence E. at 940 varas creek 6 varas wide runs S. at 147 varas, a post from which a post oak marked X bears N. 29 deg. 30' W. 2.4 varas, and a white oak marked X bears E. 4 varas; thence S. at 1,200 varas intersect the N. boundary of Erasmus Williams, a post from which a sweet gum marked X bears N. 10 E. 4.4 varas, and a post oak marked X bears N. 41 deg. 30' west 4.4 varas; thence W. with said line, passing over the creek and continuing at 1,212 varas, past Williams N. W. corner at 1,472 varas, place of beginning, surveyed March 26, 1846.
"N. B. Lewis, Practical Surveyor.
"P. T. and Jonathan McGee, C. C."

There are no marks or bearing trees to identify any of the corners of the Williams survey, so far as this record shows, that is, bearing trees called for in the original grant. The north line of the said Williams survey is well known, and the northeast corner of said Williams survey and the northwest corner of the same can be fixed with comparative certainty by the field notes of the Samuel Crooks, which lies immediately north and calls for the Williams north line. There is one corner of the Crooks, to wit, the southeast corner, on the north line of the Williams, which seems to be by the surveyors fully identified. This southeast corner of Crooks, according to the field notes of the Crooks, is 132 varas west from the northeast corner of the Williams. The southeast corner of the Crooks cannot be shown to be identical with the northeast corner of the Williams by any bearing trees or marks, and we are assured that Lewis, who located both tracts,

would, if the corners had been identical, thus make the call. He says, on the contrary, that the line of the Crooks running south *intersects the north line of the Williams and corners on same.* (Italics ours.)

There is no discoverable reason why the north line of the Williams, as run by the original surveyor, should have been short. All the surveys near the same are junior surveys. S. P. R. R. Co. section No. 1 was located in 1885, 45 years after the Williams survey was located, and the S. P. R. R. Co. No. 1, in case it conflicts with the Williams, must yield to the lines called for in the Williams field notes. There seems to be an unanimity among the surveyors that the bearing trees, as called for at the northeast corner in the Williams grant, cannot now be found and identified, but one of the surveyors, McMahon, admits that there is an old line running north and south about 100 yards east from what they call the Crooks southeast corner.

The above statement brings us to the question as to what are the rules of law that should be applied to the facts of this case in determining the issue of the boundary as to the Williams survey.

[2] It seems to be well established that lines and boundaries cannot be constructed with reference to objects that may be found upon the ground as indicating the footsteps of the surveyor, when there are no calls in the grant for such objects.

Appellees claim, and there is some testimony that there is a line running from what is called the Crooks corner south, which line runs just in front of the doorstep of appellee Emma Adams. There is, however, testimony that this line was made by a surveyor named Cox, who surveyed the west line of the S. P. R. R. Co. section No. 1, and that the marks at the northeast corner of this line were placed on the trees by the said Cox. Whether or not this line is the west line of S. P. R. R. Co. section No. 1, or made in the subdivision of the various tracts on the Williams or otherwise there are no indications that this line was established by the surveyor who originally surveyed the E. Williams, and no marks or trees to indicate his footsteps. As said before, there is also testimony of a line about 100 yards further east that runs north and south, and which more nearly satisfies the call in the grant for the east line of the Williams.

In the case of Railway Co. v. Anderson, 36 Tex. Civ. App. 121, 81 S. W. 781, the court said:

"The contention is that the footsteps of the surveyor who located the right of way could be found at places other than that called for in the descriptive matter contained in the deed, and to go to this point would extend the right of way some distance further north than 25 feet from the center of the track. The difficulty that lies in the way of supporting this contention is that the objects sought to be established by the appellant as found upon the ground, as indicating the boundaries of the right of way, according to its theory, are not called for in the field notes of the deed under which it holds; and in cases of this character the rule seems to be well established that lines and boundaries cannot be construed with reference to objects that may be found upon the ground as indicating the footsteps of the surveyor, when there are no calls in the grant for such objects"—citing Anderson v. Stamps, 19 Tex. 460; Ratliff v. Burleson [7 Tex. Civ. App. 621] 25 S. W. 983, 26 S. W. 1003.

In the case of Guill v. O'Brien, 121 S. W. 593, it is said:

"It is a settled rule of law in determining the true dividing line between surveys, as in this case, that if from a definite beginning point course and distance alone will with certainty locate and identify the line, as in this case, they will be held sufficient. Course and distance will control, then, under the surrounding and connecting circumstances. They are the most certain and reliable evidences of the true locality of the grant [citing Robinson v. Doss, 53 Tex. 506].

"Where no marked trees are on the ground identified by the evidence as those of the grant, as in this case, the true boundary must be ascertained by course and distance given in the patent. Luckett v. Scruggs [73 Tex. 519] 11 S. W. 529."

See, also, Keystone Mills Co. v. Peach River Lumber Co., 96 S. W. 64; Hamilton et al. v. Blackburn, 43 Tex. Civ. App. 153, 95 S. W. 1094; Brodbent v. Carper, 100 S. W. 183; Blackwell v. Coleman, 94 Tex. 216, 59 S. W. 530; Sloan v. King, 33 Tex. Civ. App. 537, 77 S. W. 48; Reast v. Donald, 84 Tex. 653, 19 S. W. 795; Coleman County v. Stewart, 65 S. W. 385; Hermann v. Thomas, 168 S. W. 1037.

The line appellees claim to be the east line of the Williams, neither from its age, from marks or bearing trees or circumstances, and especially from the fact that it does not run from the corner called for in the Williams grant as the northeast corner of same, cannot be and was not in any manner identified as having been made by the original surveyor of the Williams on the ground. If, therefore, the Williams north line, as called for in the original field notes, can be discovered at any place (and it is conceded that the said north line is well established, and is for the greater part identical with the south line of the Samuel Crooks), then no fact is shown in the record why the said line should not run its complement of varas. There is nothing to show why the said line should be arrested. Therefore we can begin at any given point on the north line of the Williams, which can be positively fixed, such as the Crooks southeast corner has been, and it is only a question of course and distance to find either the northeast or the northwest corner of the Williams, and, if the bearing trees called for in the grant are not found, they will be presumed to have been there. It is conceded that none of the improvements of the appellees are on the S. P. R. R. Co. section No. 1, if the northeast corner and the east line of the Williams be fixed as stated above. The boundaries, or rather the northeast corner, of the Williams survey, being fixed at a

point 132 varas east of the southeast corner of the Samuel Crooks, is decisive of all questions raised on this appeal. The boundaries of the Williams are fixed by its calls and the calls of the Crooks survey located by the same surveyor, near the same time.

As stated before, if the southeast corner of the Crooks was identical or nearly so with the northeast corner of the Williams, no reason can be imagined why it was not so nominated. We are of the opinion that the north line of the Williams should be fixed by course and distance, and, nothing in this record being shown to arrest same, and no bearing trees being now found at the northeast corner of the Williams, as set out in the grant, they will be presumed to have been there.

We are of opinion that the northeast corner of the Erasmus Williams survey should be, and we find the same to be, 132 varas east from the Crooks southeast corner, which is shown to have been on the north boundary line of said Williams survey.

What has been said disposes of the case.

The judgment of the lower court is therefore reversed, and judgment here rendered for appellant.

Reversed and rendered.

---

&wkey;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

