### F. F. CHEW ET AL. v. MARY A. ZWEIB.

Decided May 5, 1902.

**1.—Deed—Construction—Description—Field Notes.**

In order to reconcile any seeming conflict in the description of land as contained in a deed it is proper to construe the whole deed, and if from the entire instrument the land can be identified with certainty, no extraneous evidence is admissible, in the absence of fraud or mistake, to vary or change the location of the land as fixed by the field notes in the deed.

**2.—Same—Boundary—Reversing Calls of Field Notes.**

In construing field notes that show an apparent ambiguity resulting from an omitted call, by reason of which they do not close, it is proper to reverse the calls in the field notes, and to also consider a plat of the land contained in the deed.

**3.—Same—Limitations—Boundaries.**

Where a party acquires title to a strip of land by limitations, his vendee will take title if the land is included in the boundaries of the deed under which the vendee claims, regardless of whether or not it was included in the boundaries of the deed to the vendor.

Appeal from Harris. Tried below before Hon. William H. Wilson.

*Leon B. Smith, L. B. Moody,* and *F. F. & E. T. Chew,* for appellants.

*W. P. & A. R. Hamblen,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a boundary suit brought by the appellee against the appellants in the form of an action of trespass to try title. The land sued for is thus described in the plaintiff's petition: A part of the James Wells survey in said (Harris) county and what was known as the old Levy place: Beginning 75 varas south 10 degrees east from the old Levy corner, said Levy corner being known by the meeting of two old ditches at the intersection of which an iron bolt, which point is 334 feet north 80 degrees east from the east line of the J. S. Holman grant, and from which said corner of said Levy tract there is a ditch running south 10 degrees east to the beginning point of this survey, it being the southwest corner of the one-acre tract heretofore taken out of the said Levy survey, and which was conveyed by Louis A. Levy and Mary A. Levy to Hannah Wiener on the 27th day of July, 1859, by deed recorded in Harris County record of deeds, volume Z, pages 48 and 49; thence south 10 degrees east along an old ditch to the corner, being the west line of the Levy tract, there is a piece of marble set for corner; thence south 70 degrees east 402 feet to the northwest corner of the Tierwester survey, a marble monument, and continuing same course to the southeast corner of the Zweib tract a postoak marked X, 12 inches in diameter, north 8 degrees west 2 varas; thence north 10 degrees west 320 varas to the north line of the Levy tract; thence south 80 degrees west 125 varas, striking the end of an old ditch, and along the ditch on the north boundary line of the Levy tract to the northeast corner of said one-acre tract; thence south 10 degrees east 75 varas to the southeast corner of said one acre; thence south 80 degrees west 75 varas to the place of beginning.

There were a number of defendants in the suit, several of whom filed separate answers. It is unnecessary to set out a complete abstract of the pleadings of the defendants. It is sufficient to state that the land in controversy is described as follows:

Out of the James Wells original survey in Harris County, Texas: Beginning at a stake 264 feet north 70 degrees west from the northwest corner of the Henry Tierwester one-fourth league original survey; thence north 10 degrees west 663½ feet to an iron stake and a stone for corner; thence south 80 degrees west 135½ feet to an iron stake for corner; thence south 10 degrees east 596 feet to a stake for corner; thence south 70 degrees east 138 feet to the place of beginning.

The issue presented by the pleadings and evidence is whether the plaintiff has title to any part of the above described land, and as presented by this record the determination of this issue depends upon whether said land is included within the boundaries described in the deeds under

which appellee claims. The petition sets up title to the land in controversy by limitation, but that issue was not submitted to the jury. Plaintiff claims title to the land in controversy under mesne conveyances from Lewis A. Levy, and the determination of the question of whether said land is included within the boundaries described in the deed under which plaintiff claims depends upon the true location of the west line of the Levy land. Appellants contend that this line is located 264 feet north 70 west from the northwest corner of the Tierwester survey, and appellee contends that it is 402 feet from said corner.

Levy owned two tracts in the James Wells survey, one containing 5 7-10 acres and the other 15 1-5 acres. The smaller tract is described in the deed by which it was conveyed to Levy as follows:

Survey of 5 7-10 acres of land known as Victor Souza's late residence situated in Harris County, and about one mile southeastwardly from the courthouse in the city of Houston, being a part of the tract of land originally surveyed for James Wells, bounded on the S. W. by Tierwester's 1-4-league grant and on the N. E. and N. W. by land known and designated as Heddenberg & Vedder's: Beginning at a stake in the prairie 8 two-pole chains N. 70 deg. W. from the N. W. corner of Tierwester's (corner) at 4 chains same course in all 17 chains to a stake in the prairie, running thence N. 25 deg. W. 8 chains to a stake in the prairie from which a water oak 14 inches dia. marked C. bears N. 11 deg. dist. 115 feet; running thence south 83 deg W. 12 3-4 chains to the first named corner and place of beginning. Surveyed Sept. 21st, 1843. Geo. H. Bringhurst, C. S. H. C.

This deed also contained the following plat of the land which appears in the deed immediately preceding the field notes: '

This deed was executed November 1, 1843. George H. Bringhurst was county surveyor of Harris County at the time this land was surveyed, as recited in the field notes contained in said deed. In the surveyor's record book kept by said Bringhurst the field notes of this survey made by Bringhurst September 21, 1843, are recorded as follows: "Beginning at a stake in the prairie 16 rods N. 70 deg. W. from the

N. W. corner of the H. Tierwester tract; running thence S. 70 deg. E. passing said Tierwester's corner at 16 rods same course, in all 68 rods to a stake in the prairie; running thence N. 25 deg. W. 32 rods to a stake in the prairie, from which a water oak 14 inches in diamenter marked "C" bears N. 11 deg. W. distance 115 feet; running thence S. 83 deg. W. 51 rods to the first named corner and place of beginning." The 15½ acre tract is thus described in the deed from Wells to Levy: "Beginning for first corner at a stake in the prairie on the northeast boundary line of a one-fourth of a league of land graned to H. Tierwester, and being also the southeast corner of land now owned by said Levy; thence N. 10 deg. W. 825 feet passed a gum tree 6 in. in diameter marked or crossed on the east side same course in all 1174 feet to a stake in the prairie for 2nd corner from which a turkey or water oak 10 in. in dia. marked "X" bears S. 51 deg. 30 min. E. dist. 47 feet; thence S. 80 deg. W. 967 feet to a stake in prairie for third corner; thence S. 10 deg. E. 630 feet to a stake in the prairie; thence N. 80 deg. E. along the northern boundary line of said Levy's tract 841½ feet to a stake in prairie for 5th corner, and being also the N. E. corner of this tract; thence S. 25 deg. E. with said Levy's eastern boundary line 528 feet to the place of beginning."

The northwest corner of H. Tierwester survey is known and established and can be identified upon the ground. On July 27, 1859, Levy and wife conveyed to Hannah Wiener one acre of land out of the 15 1-5 acres tract, "to be taken out of the northwest corner of said tract and to contain 200 feet square." After the death of Lewis A. Levy, his wife, Mary Levy, to whom he had devised all of his estate and who had qualified as executrix of his will, conveyed to Henry Wiener and Isaac Levy a tract of 10 1-3 acres of land described as follows: "Ten and one-third acres of land out of the J. Wells and H. Tierwester grants, situated in the corporate limits of the city of Houston, including the dwelling and improvements of the said Mary A. Levy; beginning at the S. W. corner of a one-acre tract owned by said Henry Weiner and wife; thence S. 10 deg. E. 245 vrs. cor. stake; thence N. 80 E. 200 vrs. cor. stake from which a post oak 12 in. in dia. marked X. lies N. 8 W. 2 vrs. dist.; thence N. 10 W. 320 vrs. cor. stake; thence S. 60 W. 125 vrs. cor. stake being N. E. cor. of the one acre tract; thence S. 60 W. 125 vrs. cor. stake being N. E. cor. of the one-acre tract; thence S. 10 E. 75 vrs. cor. stake; thence S. 80 W. 75 vrs. to the beginning."

This deed was executed January 5, 1866. On May 17, 1867, Isaac. Levy and wife conveyed all of his interest in said tract to Henry Weiner. On January 8, 1873, Henry Weiner executed a deed of trust on said 10 1-3 acres tract. The land was sold under this trust deed by E. P. Hamblen to the appellee. The field notes in the deed from Hamblen to appellee are identical with the field notes in the deed from Mary Levy to Henry Weiner above set out.

Lewis A. Levy died in 1861. He lived on the two tracts of land purchased from Wells until his death and kept the same inclosed. He dug

a ditch along the north and west sides of his inclosures, and this ditch can still be traced on the ground. The ditch which ran along the west line of his inclosure is located 402 feet from the northwest corner of the Tierwester survey, and appellee contends is on the true west line of said Levy tract. It was shown by a number of witnesses that Levy's fence on the west side of his field ran along this old ditch and that he planted some trees and a hedge on the ditch near the northwest corner of his inclosure. In 1848 James Wells conveyed to Fitzgerald a tract of land out of the Wells survey lying northwest of the Levy land. The field notes in this deed place the southeast corner of the land conveyed 24 feet south 80 west from Levy's northwest corner and the calls for distance in this deed for the Holman east line, which is well established, puts the levy northwest corner at the place contended for by appellee. James Wells died in 1848. After his death his heirs in a suit brought in 1860 involving a portion of the Wells survey north and east of the Levy tract, in describing the land claimed by them, call for the Levy fence from the northeast to the northwest corner of the Levy field as one of the boundaries of their land. In two other suits in the District Court of Harris County, one of them being brought as late as 1892, the Wells heirs in their description of the land claimed by them recognize the line claimed by appellee as the west line of the Levy tract, and in a partition suit between the Wells heirs and others, in which the report of the commissioners was filed in 1896, the field notes of the land which was partitioned calls for the west line of the Levy tract along the old ditch as claimed by appellee. The appellants, Joseph T. and C. A. Wells, are two of the heirs of James Wells, and the appellants, F. F. Chew, T. H. Pollard, Jas. H. Berry, and the Fidelity Savings Association, claim title to portions of the land in controversy under conveyances from the heirs of James Wells.

In 1862 Mrs. Mary Levy executed a written instrument in which it is admitted that she had within her inclosure land belonging to one W. C. O. Driscoll, and agrees to remove her fence whenever Driscoll shall point out the boundaries of his land and demand that the fence be removed. At the time this agreement was executed Driscoll owned land on the Wells survey west of and adjoining the west line of the Levy tract, and it was shown that the only fencing that was ever erected by the Levys was along the old ditches before mentioned. The fencing around the Levy place was destroyed many years ago and for thirty years the land was uninclosed, with no fence or improvements of any kind to indicate its boundaries. In 1885 the appellee had her 10 1-3 acres tract subdivided into blocks and lots and placed upon record in Harris County a map showing such subdivision. This map places the west line of appellee's land at the place contended for by appellants as the true location of said line. In 1892 appellee had the blocks in her survey rearranged so that the streets would correspond with the streets in the city of Houston, and a new map made. This map was also recorded in the

Harris County records and shows the west line of appellee's tract to be located as claimed by the appellants. The southwest corner of the Weiner one-acre tract, which is the beginning corner of appellee's land, as now located, was shown to be on the west line of the Levy tract as claimed by the appellants. W. A. Polk, a surveyor, testified that he had surveyed said one-acre tract and found an iron pin at each of its four corners. The appearance of these pins indicate that they had been down for a long time. The witness had to dig down to find them, and they were covered with rust, showing that they had been in the ground a long time. The present owners of this one-acre tract are not parties to this suit. It is admitted by all parties that the location of the west line of appellee's land depends upon the location of the 5 7-10 acres tract formerly owned by Lewis A. Levy, the location of the west line of the 15 1-5 acres tract being controlled by the location of the smaller tract. Appellee's contention is that the field notes in the deed to the 5 7-10 acres tract are ambiguous, and that therefore resort must be had to extrinsic evidence to determine the location of said tract, and that the evidence is sufficient to sustain the finding of the jury that the west corner of said tract as originally surveyed and called for in said deed was 402 feet west of the northwest corner of the Tierwester survey.

We are of opinion that the field notes to said 5 7-10 acres tract together with the plat of said tract appearing in the deed are not ambiguous, and that it clearly appears from said deed that the west corner of said tract is only 264 feet west of the Tierwester northwest corner. While it is true that the first call in said field notes is incomplete and confusing, the entire field notes considered in connection with the plat of the land contained in the deed speak for themselves, and unaided by any extraneous evidence clearly fix the location of the west corner of said tract. The rule that a written instrument must be construed in its entirety so as to give effect to all of its parts applies as well to the field notes in a deed as to any other writing, and it is always proper in order to reconcile any seeming conflict in the description of land contained in a deed to construe the whole deed, and if from the entire instrument the land can be identified with certainty in the absence of fraud or mistake no extrinsic evidence is admissible to vary or change the location of the land as fixed in the deed. Thompson v. Langdon, 87 Texas, 258, 259. It is always permissible in order to explain a seeming conflict in calls in field notes to reverse the calls, and when this is done if the intention of the surveyor is clearly shown the field notes lose their apparent ambiguity. If we reverse the calls in the field notes under consideration, commence at the beginning corner, viz., 264 N. 70 W. from the N. W. corner of the Tierwester, and retrace the footsteps of the surveyor N. 83 E. 12 3-4 chains, thence S. 25 E. 8 chains and thence 17 chains to the place of beginning, we describe a triangular shaped tract of land containing 5 7-10 acres, the west corner of which is 264 feet west of the Tierwester northwest corner. That such is the

correct interpretation of the field notes in this deed is, we think, conclusively shown by the plat of the land which appears in the deed immediately preceding the field notes. If the construction of the first call in the field notes contended for by the appellee is adopted the survey would never close, and the field notes would not describe any land. No such construction of this call is permissible when the field notes taken as a whole, with the other descriptive matter in the deed, clearly identify and accurately describe the land.

If it be admitted for the sake of argument that these field notes are so ambiguous as to require evidence outside the deed to identify and locate the land, the field notes of this survey shown in the surveyor's record completely destroy any doubt as to the location of the land as fixed by the surveyor who made the original survey and located the lines. This record was one which the law required the surveyor to keep. No question is raised as to the authenticity of the record, nor that the land is not the identical tract described in the deed. The west corner of the 5 7-10 acre tract being fixed by the uncontradicted evidence at a point 264 feet west of the northwest corner of the Tierwester survey, it follows that the west line of the 15 1-3 acres tract which is admittedly built upon the smaller tract can not be located further west than the west corner of the smaller tract. The evidence shows beyond question that Levy's inclosure which was made shortly after he purchased the land extended west of the line called for in his deed, and that he built his fence and dug a ditch along the line now claimed by appellee as the true west line of the survey. It also shows that James Wells in his lifetime and his heirs since his death have repeatedly recognized the ditch as Levy's west line. If it was not for the doubt cast upon the character of Levy's possession by the agreement executed by Mrs. Levy in 1862, in which she admitted that she had land inclosed along her western line which she did not own, the evidence would be sufficient to show title in Levy by limitation to the land in controversy. We do not think, however, that appellee could avail herself of any title by limitation which might have existed in the Levys to the land in controversy. The deed under which appellee claims does not convey the land in controversy. It is not shown that she ever saw or knew where Levy's fence was located, or that she bought the land believing that her west line was along the old ditch which bounded Levy's field. On the contrary, it appears from the record that she supposed her west line was located just where the field notes in her deed place it, and that she had the same subdivided and a map placed of record showing her west line to be located as called for in her deed. There seems to be no shortage in appellee's land, and if its west line is fixed as contended for by appellants she has all the land called for in her deed, and same is located just where the field notes in her deed place it.

We think there is no evidence in the record to sustain the finding of the jury in appellee's favor and the judgment of the court below will

be reversed and judgment here rendered in favor of appellant. The judgment of the court below as to defendants who have not appealed is undisturbed.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

After a careful re-examination of the record in this case we have reached the conclusion that we erred in our judgment entered herein on the 1st day of May, 1902, in rendering judgment for the appellants. We adhere to the views expressed in our former opinion upon the issue upon which the case was tried in the court below, but we think there is evidence in the record which raises the issue as to whether the 10 1-3 acres tract conveyed by Mrs. Levy to Henry Weiner and Isaac Levy, and now owned by appellee, is situated along the west line of the Levy 15 1-5 acres tract as that line is located by the deeds to Levy or as the same was fixed by the ditch and fence constructed by Levy. If Levy obtained title to the strip of land involved in this suit by limitation and said land is included in the boundaries of the deed under which appellee claims, she is entitled to the same regardless of whether it was included in the boundaries of Levy's deed. As stated in our former opinion, the evidence shows that Levy held actual possession of this strip for a number of years, and if it be shown that such possession was at all times adverse, his title by limitation became complete. There is testimony to the effect that the tree called for at the southeast corner of appellee's tract can now be found and identified. If said southeast corner is fixed with reference to the location of this tree, the west line of appellee's land will be placed along the old ditch and her deed will include the land in controversy. Appellee by her pleadings set up title by limitation, and we think under all the evidence in the case she is entitled to a trial upon that issue. The motion for rehearing is granted, and the judgment heretofore entered by this court, in so far as it rendered judgment for appellants, will be set aside and judgment rendered reversing the judgment of the court below and remanding the cause for a new trial, and it is so ordered.

*Granted.*