**HAMMAN v. SAN JACINTO RICE CO. et al.**
**(No. 7964.)**

(Court of Civil Appeals of Texas. Galveston. March 3, 1921. Rehearing Denied March 31, 1921.)

1. **Boundaries** �köö8—**Rule for determining location of land by lines of survey as actually run applicable only where actual survey can be found and identified.**

The rule that the location of a tract of land must be determined by the lines of the survey as actually run and marked on the ground is only applicable where the actual survey can be found and identified as the same called for in the grant.

2. **Evidence** �köö460(6)—**Parol evidence inadmissible to vary calls not inconsistent nor ambiguous.**

When the calls are not inconsistent and no ambiguity arises when they are applied to the subject-matter of the description, the instrument speaks for itself, and parol evidence is not permissible to vary the calls.

3. **Public lands** �köö175(½)—**When survey not part of block or system of surveys stated.**

That surveys are made by the same surveyor in the same month, and that most of them call for each other, do not place them in the category of a block or system of surveys, when made for different owners of certificates, and none of them are described as one of a block or system of surveys.

4. **Evidence** �köö23(2)—**That surveys under alternate script issued as bonus to railway companies were rarely run on ground held matter of common knowledge.**

It is a matter of common knowledge that surveys located under alternate script issued as a bonus to railway companies were located in larger blocks and rarely, if ever, were the

lines of each survey actually run on the ground, the method usually followed being to run a base line for an entire block, and on this line plat a system of 640-acre surveys.

5. Boundaries ⊂⇒11—Location of survey under unambiguous field notes may not be moved because surveys adjoining those which adjoin it conflict with older grants.

Where the unambiguous field notes of a survey definitely place it in a certain location, it cannot be moved merely because some of the surveys adjoining those which adjoin it conflict with older grants.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Trespass to try title by George Hamman against the San Jacinto Rice Company and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

Maco & Minor Stewart, R. W. Houk and D. F. Rowe, all of Houston, for appellant.

Campbell, Myer & Freeman and Hutcheson, Bryan & Dyess, all of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against appellees in the form of an action of trespass to try title to the L. Hemenway 640-acre survey in Harris county. As the case developed upon the trial the only issue was one of boundary or the true location of the survey as described in the patent.

The land sued for is described in plaintiff's petition as follows:

"The Luke Hemenway survey, Abst. No. 803, Certf. No. 351, Pat. No. 53, vol. ——, recorded in vol. R. p. 89, Harris County Deed Records, same beginning at the northwest corner of land scrip No. 186; thence east 1,900.8 varas; thence north 1,900.8 varas; thence west 1,900.8 varas; thence south 1,900.8 varas to beginning, and which is further identified by the following description: Beginning at a point 5,400 varas east of San Jacinto river, at the northeast corner of Reuben White survey; thence south along the east line of Reuben White survey, 1,198 varas to a point; thence east 2,888 varas to a point, which is the northwest corner of Luke Hemenway survey No. 351; thence east 1,900.8 varas to its northeast corner; thence south 1,900.8 varas to its southeast corner; thence west 1,900.8 varas to its southwest corner; thence north 1,900.8 varas to its northwest corner, place of beginning."

The appellees answered by general demurrer, general denial, plea of not guilty, and pleas of 3, 5, and 10 years' limitation. They further pleaded:

"Agreed and recognized boundaries, and that both the Gregory surveys, owned by appellees, and the Hemenway, a part of which is owned by appellant, were located by Henry Trott, the county surveyor of Harris county, Tex., at the same time he located contemporaneously, and as a part of the same work, a block of 14 surveys, known as the Trott surveys, situated between the Reuben White and Beardsley or Baldwin surveys on the west or San Jacinto river side, and the James Scott, Hugh Morgan and Hannah Nash surveys, situated on the east or Cedar Bayou side, and that since the property owned by the plaintiff was a part of said 14 surveys made by Henry Trott, if a shortage developed in said block of surveys, the plaintiff's rights, if any he ever had, were to have the land in said block of surveys apportioned between all the owners thereof, and that the plaintiff has at no time had the right to cause these defendants to lose the whole of said shortage, if any there was."

The trial in the court below with a jury, to whom special issues were submitted, resulted in a verdict and judgment for the defendants.

Only two issues were submitted to the jury. The first issue submitted was whether the surveyor, Henry Trott, actually surveyed and located the L. Hemenway survey on the ground, and the second issue, which the jury were instructed to answer only in event they answered the first in the affirmative, was:

"Did or did not the surveyor, Henry Trott, locate the Hemenway survey, scrip 351, in the position on the ground as claimed in plaintiff's petition?"

In response to the first question the jury answered "Yes," and to the second "No."

It was agreed by the parties that the plaintiff owned the land within the boundaries of the Hemenway survey unless previously conveyed or lost by limitation, and that the defendants own the lands claimed by them which are found to be within the boundaries of the surveys named in their answer (The Walter Gregory surveys).

The description and field notes in the patent to the Hemenway survey are as follows:

"Survey of six hundred and forty acres of land for Luke Hemenway, ass'ee of Sam'l M. Williams. Situated between the waters of the San Jacinto and Cedar Bayou north and adjoining a survey made for land scrip No. 186 & east & adjoining a survey made for Baldwin. Being about 6 miles from Lynchburg and about 18 miles from the city of Houston. Being the quantity of land to which he is entitled. By virtue of land scrip No. 351. Dated at New Orleans on the tenth day of August, 1836. Beginning at the N. W. corner of land scrip No. 186 a post on the east boundary line of a survey made for Baldwin; thence east 1,900$^8/_{10}$ vrs. with the north boundary line of a survey made for land scrip No. 186 to a post in prairie, being the N. E. corner of said survey & the N. W. corner of a survey made for land scrip No. 187; thence north 1,900$^8/_{10}$ vrs. to a post in the prairie; thence west 1,900$^8/_{10}$ vrs. to a post in the prairie; thence south at 940 vrs. past the N. E. corner of said Baldwin survey 1,900$^8/_{10}$ vrs. in all with his line to the place of beginning."

It was agreed by the parties that the beginning corner of this survey, called for in the field notes, which is the northwest corner of August Whitlock survey No. 186 on the east line of the Baldwin survey, can be and is definitely fixed on the ground by course and distance from the east line of the Reuben White survey, which survey was made in 1825 and the northwest corner of which as fixed and established by the original survey on the bank of the San Jacinto river is now known and recognized and its east line, fixed by course and distance from said corner, is and has long been known and recognized.

It was further agreed:

"That the true location of the northeast corner of the Reuben White survey is at the point that has been stated by Mr. Stimpson as its northeast corner, and being indicated on the map *xy* a circle and the letter *a* where the county road jogs. That the true east line of the Reuben White survey extends from that jog in the road south to an intersection with the north line of the George White, and that the Baldwin survey lay immediately east of that line last described, and was 2,888 varas in width. That Mr. Trott considered it to be that width, and that is a fact that we get on the ground, and that the four H. T. & B. surveys and the Ruby survey lay over and take in and include the Baldwin survey as laid out on the ground just as indicated. That if you begin and survey the August Whitlock 186 at the point on the ground that counsel for defendant has admitted is the true southeast corner of the Baldwin survey, and survey that Whitlock according to its field notes, and then survey the Hemenway 351 according to its field notes on the ground by beginning this survey at the admitted southeast corner on the ground of the Baldwin, you would place the August Whitlock 186 and the Hemenway 351 as shown on the Maxey map."

The Maxey map locates the Hemenway survey as claimed by plaintiff.

The Walter Gregory survey No. 41, which is owned by defendants, lies east of and adjoining the Hemenway. The description and field notes of the Gregory contained in its patent are as follows:

"Situated between the waters of San Jacinto river & Cedar Bayou north and (adjoining) a survey made for land scrip No. 187 and east & adjoining a survey made for land scrip No. 351. Being about 6 miles from Lynchburg and about 19 miles from the city of Houston. Being the quantity of land to which he is entitled by virtue of land scrip No. 41. Dated at New Orleans on the 13th day of July, A. D. 1836.

"Beginning at the N. E. & S. E. corners of survey made for land scrip Nos. 186 & 351 a post in the prairie, also the N. W. corner of land scrip No. 187; thence east $1,900^8/_{10}$ vrs. with the north boundary line of said survey to the N. E. corner a post in the prairie; thence north $1,900^8/_{10}$ vrs. to a post in the prairie; thence west $1,900^8/_{10}$ vrs. to the N. W. corner of a survey made for land scrip No. 351, a post in the prairie; thence south $1,900^8/_{10}$ vrs. with the east boundary line of said survey to the beginning. Surveyed April, 1839."

As stated in defendants' answer the L. Hemenway 351 and the Walter Gregory 41 are 2 of 14 surveys located by Henry Trott, surveyor of Harris county, in April, 1839.

The field notes of the first of these surveys appearing on the surveyor's record are those of A. Whitlock No. 186. These field notes are as follows:

"Situated between the waters of the river San Jacinto and Cedar Bayou, north of and adjoining a tract of land granted to Geo. White, and east of a survey made for Baldwin, being about 5 miles from Lynchburg and about 18 miles nearly east from the city of Houston. Being the quantity of land to which he is entitled by virtue of land scrip No. 186 dated at New Orleans on the eighth day of August, 1836. Beginning at Beardsley's southeast corner at post in the prairie on Geo. White's north boundary line; thence east $1,900^8/_{10}$ varas with his line to a post in the prairie; thence north $1,900^8/_{10}$ varas to a post in the prairie; thence west $1,900^8/_{10}$ varas to a post in prairie in Baldwin's east boundary line; thence south $1,900^8/_{10}$ varas to the place of beginning."

The George White north boundary line is fixed and well known, and, as has been before stated, so is the east line of Beardsley or Baldwin survey, and no ambiguity develops when the field notes of this Whitlock survey are applied to the ground.

The second field notes appearing on the surveyor's record are those of A. Whitlock No. 187. These field notes call to begin—

"at the southeast corner of a survey made for land scrip 196, a post in prairie on Geo. White's north line; thence east $1,900^8/_{10}$ varas with said White's line to a post in the prairie; thence west $1,900^8/_{10}$ varas to the northeast corner of land scrip No. 186, a post in the prairie; thence south $1,900^8/_{10}$ varas with its east boundary line to the beginning."

When this survey is located in accordance with the field notes there is some conflict at the southeast corner of the survey between its east and south lines and the west and north lines of the George Ellis, which is an old and established survey.

The third survey is Luke Hemenway 196. The field notes of this survey, which call to begin at the southeast corner of No. 187, conflict both with the George Ellis and Hannah Nash, another old and established survey, much the larger portion of survey No. 196, when located according to the calls of its field notes, being on the Ellis and Nash surveys.

The Hannah Nash is called for in the field notes for the east line of this survey, but the only call for the George Ellis is a passing call for its northwest corner.

The fourth survey is L. Hemenway 351, the

proper location of which is the question involved in this suit, and the field notes of which we have before set out.

Survey No. 5 is Walter Gregory No. 41, above described, the field notes of which are free from ambiguity when applied to the ground. The next field notes on the record are those of Walter Gregory No. 42 and are as follows:

"Beginning at a stake and mound in the prairie on the east boundary line of a survey made for land scrip No. 187, being the northwest corner of survey for land scrip No. 196; thence east 1,850 varas with the north boundary line of said survey to a post in prairie in Nash's west boundary line; thence west 10 degrees west 1,602 varas with said line to a post in the prairie, being the northwest corner of said survey; thence north 80 degrees east 1,160 varas with the north boundary line of said survey to an oak mkd. XII on Cedar bayou, being the southwest corner of a survey made for Morgan; thence up the bayou with said Morgan's west boundary line 280 varas to a point from which an ash mkd. XIII near; thence west 2,610 varas to a post in prairie in the east boundary line of a survey made for land scrip No. 41; thence south 2,000 varas to the place of beginning."

The call in these field notes "west 10 degrees west" is an obvious clerical error, and should be "north 10 degrees west." If the L. Hemenway scrip 351 was located as called for in its field notes on the east line of the Baldwin and the Gregory No. 41 on the east line of the Hemenway, these field notes of Gregory No. 42 are manifestly ambiguous and conflicting when applied to the ground, the established west line of the Nash survey being about 1,200 varas west of Cedar Bayou and within a short distance of the east line of survey 187.

The seventh of these 14 surveys in the order in which the field notes appear upon the surveyor's record is the Walter Gregory No. 43. The description and field notes of this survey are as follows:

"Situated on Cedar Bayou west of and adjoining a survey made for Morgan north and adjoining a survey made for land scrip No. 42, and about 8 miles from Lynchburg and about 20 miles from the city of Houston. Being the quantity of land to which he is entitled by virtue of land scrip No. 43, dated at New Orleans on the thirteenth day of July, 1836.

"Beginning at the northwest corner of a survey for land scrip No. 42 a post in the prairie in the east boundary line of land scrip No. 41; thence east 2,610 varas to a post from which an oak on the bank of the bayou mkd. XIII near; thence north 10 degrees with the corner of the bayou a considerable distance crossing it at 517 vs. and crossing it again at 1,116 vs. at 1,500 vs. in all made corner on post from which; thence west 2,340 vs. to a stake and mound in the prairie; thence south 1,460 vs. to the place of beginning."

These field notes are also clearly ambiguous on their face, and cannot be applied to the ground and the survey made to fit with the calls for Cedar bayou and the adjoining surveys.

The next field notes appearing on the record are for the Walter Gregory No. 44, which are also ambiguous and cannot, when applied to the ground, be made to locate the survey as called for with reference to Cedar bayou and the surrounding surveys.

Then follows the field notes of S. F. Champney No. 93. This survey is described as being south of and adjoining the James Scott survey and west of and adjoining Walter Gregory No. 44.

"Beginning at southwest corner of James Scott's league a stake and mound in prairie; thence north 10 degrees east with his south line, 1,915 varas to northwest corner of a survey for land scrip 44, a stake and mound in sd. Scott's line; thence south 1,950 varas with said land to a stake and mound in prairie, on north line of survey for scrip 41; thence west 2,070 varas to stake and mound in prairie in north line of a survey for scrip 351; thence north 2,360 varas to stake in prairie in sd. Scott's west line; thence south 10 degrees east 760 varas with said line to beginning."

The southwest corner of the Scott league is fixed and known and the Champney survey can be definitely located on the ground by course and distance from this known beginning corner.

The next field notes appearing on the record are those of the Addison Weld survey scrip No. 183. This survey is described as being east of and adjoining the Baldwin survey and west of and adjoining the Champney above described. When the field notes of this survey are applied to the ground, it is found that it cannot be located between the Baldwin survey and the Champney as that survey is fixed by beginning at the southwest corner of the Scott league and locating said survey by course and distance; there being no room between said surveys for the Weld.

The remaining surveys of the 14 are located north of and adjoining the Baldwin and Reuben White surveys, and when their field notes are applied to the ground they develop some discrepancies in the distances called for along the Baldwin and Reuben White lines.

The foregoing is thought to be a sufficient statement of the evidence bearing upon the questions hereinafter discussed and decided. We deem it unnecessary to decide all of the questions presented by appellant's several assignments of error.

The first question which we will discuss is whether, there being no ambiguity in the description and field notes contained in the patent to the L. Hemenway survey owned by appellant when such description and field notes are applied to the ground, it can be shown by extraneous evidence that the sur-

vey was not located where said description and field notes place it.

[1, 2] It is well settled by our decisions that the rule that the location of a tract of land must be determined by the lines of the survey as actually run and marked upon the ground is only applicable where the actual survey can be found and identified as the same called for in the grant. If the calls are not inconsistent and no doubt or ambiguity arises when they are applied to the subject-matter of the description, there is no room for construction, and the instrument speaks for itself. In such case to permit parol evidence to vary the calls would be to violate the fundamental rule that extraneous evidence will not be heard to vary the terms of a written instrument. The "footsteps of the surveyor" will not be followed outside the boundaries fixed by the field notes of the grant when such boundaries can be found and identified upon the ground.

There is no inconsistency in the calls for the L. Hemenway survey, and when the description and field notes contained in the patent are applied to the ground no doubt or ambiguity arises, and the land called for in the grant can be found and identified. This being so, to show by extraneous evidence that the survey was actually located elsewhere than the field notes in the patent placed it would be in violation of the rule against varying a written instrument by parol evidence. Anderson v. Stamps, 19 Tex. 461; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Johnson v. Archibald, 78 Tex. 96, 14 S. W. 266, 22 Am. St. Rep. 27; Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031; Jamison v. Land Co., 77 S. W. 969; Chew v. Zweib, 29 Tex. Civ. App. 311, 69 S. W. 210; Diffie v. White, 184 S. W. 1068.

Counsel for appellees contend in their brief that the rule against the admission of extraneous evidence to change the location of a survey as fixed by the description and field notes contained in the deed is not applicable when the survey is one of a block or system of surveys made by the same surveyor as one piece of work, and in support of this contention cite a number of cases from this and other jurisdictions. Among the Texas cases cited are McCormack v. Crawford, 181 S. W. 485, Standefer v. Vaughan, 219 S. W. 484, and State v. Sulflow, 60 Tex. Civ. App. 615, 128 S. W. 652. An examination of these cases shows that the courts in the opinions delivered therein were dealing with a very different state of facts from those presented in this record. The issue in the case first cited was whether there was a vacancy as claimed by the appellant McCormack, between block C–3 and block S–I and J–K on the west, and this question involved the issue of the true location of surveys 3 and 5 in block C–3.

According to the calls of the surveys in said block the beginning corner of lot 1, which is on the northwest corner of the block, was 15 miles south from the southeast corner of survey 124, block M–S, and 12 miles south of the southwest corner of survey No. 1, block M–13. The remaining calls are: south 1,900 varas, a mound; east 1,900 varas, a mound; north 1,900 varas, a mound; west 1,900 varas to the beginning. Each of the remaining 14 640-acre surveys in this block are built on survey No. 1, and have similar field notes. If block C–3 is located according to the calls of these surveys, there is a vacancy of 1,621 varas between the west line of the block and the east line of block J–K, which was subsequently located. Survey No. 1 of block J–K calls to begin at a mound in the northwest corner of survey No. 4 in block C–3. The field notes of survey No. 3 in block J–K as one of its corners calls for a sod monument which is a well-established corner of survey No. 9 in block J–K. All of these surveys in block J–K which touch block C–3 or the sod monument call for them. The surveyor who located these blocks testified:

"I ran south for 15 miles to a mound and two pits at the end of each mile. I then turned and ran south 45 east, diagonally across 10 sections, putting a mound and two pits at the proper points for the corner of each section. At the end of the tenth section I established an earth monument. Then I ran east for 10 miles, establishing a mound and two pits at the end of each mile, continuing east on the eleventh mile at 38 chains, crossed a creek, which was afterwards known as Running Water; at 80 chains, established a large earth monument, which was afterwards adopted as the northeast corner of survey 9, block J–K. * * * All the blocks M–6, M–8, M–13, M–15, and C–3 were all plotted in after these lines were run, and wherever they touched these base lines the corners on said lines were adopted as the corners for the surveys in said blocks. None of the surveys in blocks M–13 and C–3 were run out on the ground, and the corners established by me, except where any survey may have touched the base line as above. I suppose you call them office surveys, but they were all plotted and supposed to connect properly from the base line as above described. H. C. Hedrick was not a practicing surveyor, and he signed some of the field notes as a deputy surveyor of the Jack land district, plotted from the base lines run by me. He has been dead a number of years. Jot Gunter and T. S. McClelland are also dead."

From this statement of the case it appears to us that the rule we have before stated against the introduction of extraneous evidence to vary the unambiguous field notes in a deed was not involved. Appellant in that case invoked the rule, and his contention that it was applicable was thus disposed of by the court's opinion:

"The proposition is urged under the second assignment that: 'Where a survey or block

of surveys can be definitely located from the calls of their own field notes, and there is no ambiguity or uncertainty in the calls, the land must, as a matter of law, be located from the field notes, and it is error to authorize a jury to locate the survey or surveys from a line run but not marked or called for.'

"In support of these propositions appellant cites Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Upshur County v. Lewright, 101 S. W. 1013; Keystones Co. v. Peach River Lumber Co., 96 S. W. 64; Johnson v. Archibald, 78 Tex. 96, 14 S. W. 267, 22 Am. St. Rep. 27; Anderson v. Stamps, 19 Tex. 460; Converse v. Langshaw, 81 Tex. 275, 16 S. W. 1031; Blackwell v. Coleman County, 94 Tex. 216, 59 S. W. 530; Coleman v. Stewart, 65 S. W. 384; Matthews v. Thatcher, 33 Tex. Civ. App. 133, 76 S. W. 61. We admit that a careful perusal of these authorities tends to sustain appellant's contention; but the testimony of Summerfield was not objected to, and indeed part of it was introduced by appellant. No conflict appears from an inspection of the field notes of the various sections of which block C–3 is constructed, but a serious conflict arises between the calls in the field notes of survey No. 1 of that block and the testimony of Summerfield, wherein he details the manner in which the block was constructed. Having introduced this testimony appellant is in no position now to complain in this court. The evidence having been admitted, it became a question of fact as to the proper location of block C–3 upon the ground, and the intention of the surveyor with reference thereto. Cox v. Finks, 41 S. W. 95; Busk v. Manghum, 14 Tex. Civ. App. 621, 37 S. W. 459; Masterson v. Ribble, 34 Tex. Civ. App. 270, 78 S. W. 358; Taft v. Word, 124 S. W. 437; Gilbert v. Finberg, 156 S. W. 507."

We think it clear that this opinion does not sustain the action of the trial court in admitting in evidence for the purpose of raising an ambiguity in the description of the L. Hemenway survey field notes of other surveys not contiguous to nor called for by the Hemenway.

The facts in the case of Standefer v. Vaughan are in many respects similar to those in the case just discussed. The issue in that case was whether a vacancy existed between two blocks of surveys. The following syllabi of the opinion sufficiently indicate the points and scope of the decision:

"1. In arriving at true location of block in a system of surveys, the conditions and circumstances surrounding its location, as well as the lines actually run by the surveyor, and the corners fixed on the ground, should be considered.

"2. Where a corner or line is found marked, it influences all other surveys in the block, even though it operate to change calls for courses or distances.

"3. Under Rev. St. 1911, arts. 5396–5399, enacted to validate surveys and provide for ascertainment, distribution, and sale of the excess in surveys made for the school fund, in constructing blocks of surveys in which there is an excess, they must be constructed consec-utively as placed therein by the original maps, sketches, or field notes.

"4. Where no evidence can be found on the ground of the actual location of the beginning call, the calls may be reversed and run from marks found on the. ground which are a part of the survey made.

"5. While ordinarily a call for an adjoiner will control course and distance, not so where it is shown it was a mistake or made on conjecture.

"6. Lost lines and corners should be located from the nearest known corners, especially when a corner called for is in conflict with all the other calls found and established, and which are nearer in point of time and distance.

"7. Field notes of blocks of surveys held not to create a vacancy between them, but to evidence intention to tie them together."

The Sulflow Case only reaffirms the well-settled rule that the beginning corner of a survey has no more importance in locating the survey than any other corner, and where all the sections of a block of surveys were surveyed by the same person, in the absence of evidence as to how the surveys were made, it is permissible to locate them in the reverse order in which they are called for in the field notes.

[3] We do not think the 14 Trott surveys, which include the survey in controversy, can be regarded as a block or system of surveys as that term is used in the opinion above cited. There seems to have been a lamentable 'lack of system in their location. No base line appears to have been run, and the surveyor evidently did not know the location of the Nash and Ellis surveys on Cedar bayou, and was therefore mistaken in the distance between these surveys and the old established surveys on the San Jacinto river. We hardly think that the fact that the surveys were made by the same surveyor within the same month, and that most of them call for each other, place them in the category of a block system of surveys. They were made for different owners of certificates, and none of them were described in their field notes as one of a block or system of surveys.

[4] In each of the cases cited the court was dealing with a block of surveys located under alternate scrip issued as a bonus to railway companies, and under the provisions of our statutes when such script was located, with the location of each section or survey for a railway company an adjoining section was located for the public school fund. It is a matter of common knowledge that these surveys were located in large blocks, and rarely if ever were the lines of each survey actually run on the ground. The method usually followed by the surveyor being to run and mark a base line for an entire block and on this line block and plat a system of 640-acre surveys. It was expressly found by the court that this

was the method pursued in the locations involved in the McCormack Case, supra.

The Legislature of this state, recognizing the inaccuracies and uncertainties that must often occur in such a system, or method of locating lands, expressly provided by an act passed in 1889 (article 5396, Revised Statutes) that—

"Surveys and blocks of surveys made by virtue of valid alternate scrip be and the same are hereby declared to seggregate from the mass of the public domain all the land embraced in said surveys, or blocks of surveys, as evidenced by the corners and lines of same, or by calls for natural or artificial objects, or the calls for the corners and boundaries of other surveys, or by the maps and other records in the General Land Office."

The rule of evidence provided by this statute authorized the ruling of the courts in the cases cited, but is, we think, applicable only to the kind of locations mentioned in the statute. But regardless of this statute, the holdings in these cases are not in conflict with the general rule against the admission of extraneous evidence to change the location of a survey of land as fixed by the field notes in the grant. In both the McCormack and Standefer Cases the maps in the Land Office made from the sketches of the surveyor, which he was required by the statute to return with his field notes, show that the blocks of surveys involved in the controversy adjoined, and no vacancy existed. These sketches, under the statute, became a part of the grant, and the inconsistency in the locations as shown by the sketches and maps and the calls in the field notes was an ambiguity in the description contained in the grant, and extraneous evidence was therefore clearly admissible to fix the true location of the surveys.

It was further pointed out in the opinion in the McCormack case that the call for M-15 and M-8 in the field notes of lot 1 in block C-3, which produced the ambiguity in the description of the blocks, was not a locative call, and should give way to the call for the sod monument, a special locative call.

We are further of opinion that the judgment of the court below cannot be sustained because the finding of the jury that the surveyor, Henry Trott, did not locate the Hemenway survey scrip 351 in the position on the ground as claimed in plaintiff's petition, finds no support in the evidence.

It is worthy of remark that the question propounded does not require the jury to find the true location of the lines of the Hemenway, nor of the lands on the Gregory surveys owned by defendants. The form of the questions is probably due to the fact that there is no evidence from which the jury could have definitely located the Hemenway at any place other than that fixed by the calls in its field notes, which place it as claimed by plaintiff in a square form east of and adjoining the agreed true east line of the Baldwin survey. Of course it is possible that Trott, who was the county surveyor of Harris county, did not know of the old established corner of the Reuben White, nor the location of the east line of that survey and of the Baldwin, which was based on the Reuben White; but evidence to be sufficient to establish a fact must have more probative force than only to raise a possibility, surmise, or suspicion of the existence of the fact sought to be established, and we think this is all that can be said of the evidence offered by the defendants in this case to show that plaintiff's land was not located where its field notes placed it.

If we take the three lower or southern tiers of the Trott surveys, we cannot locate them by reversing the calls in their field notes, because it is impossible to locate any beginning corner on the east line of the third survey, the Luke Hemenway 196. The Hannah Nash west line can be located, but no point in that line for a beginning corner can be found or fixed, and any location of the survey west of the Hannah Nash would be purely arbitrary and independent of its field notes.

This is also true of the next tier of three surveys, there being conflicts in the calls for Cedar bayou and for the Morgan and Nash corners in the field notes of the most eastern of the three surveys, Gregory No. 42.

[5] We think the evidence as a whole is clearly insufficient to support a finding that in locating these six surveys Trott began at some unknown and indefinite point in the Hannah Nash survey, or on Cedar bayou, and located the surveys in each tier consecutively to the west, in the face of his sworn statement that he began at a definite and fixed point on the established Baldwin east line and located the surveys consecutively east to what he evidently supposed was the Hannah Nash survey. There is, we think, no rule of law or reason which would permit the location of the survey owned by plaintiff to be moved from where its unambiguous field notes definitely place it merely because some of the surveys adjoining those which adjoin it conflict with older grants, and this is all that is shown by the evidence in this case relied on by the defendants to sustain the finding of the jury that plaintiff's land was not located where its field notes fix it.

Upon the issue of limitation and agreed boundary pleaded by the defendants, the trial court found:

"That there was no evidence of the payment of taxes on the Hemenway survey by defendants.

"That there was no evidence of continued possession by defendants for as long a period as 5 years prior to the filing of this suit.

"There was no evidence of any use of said

property by defendants for as long a period as 5 years prior to the filing of this suit.

"There was no evidence of any agreed boundary between plaintiff and defendant or parties deraigning title under them.

"There was no evidence of any facts that would estop plaintiff from claiming the Hemenway land to be in the position contended for by him, and as shown or indicated by its field notes."

These findings are all supported by the evidence, with the possible exception of the finding that there had been no continuous possession and use of the property by defendants for five years prior to the filing of this suit, which, in view of the other finding upon the issue of limitation and our conclusion that none of the land claimed by plaintiff is in the Gregory survey owned by defendants, becomes immaterial. The defendants, having no deed or title of any kind to any of the land claimed by plaintiff, cannot prescribe under either the 3 or 5 years statutes of limitation. Their right to claim under the 5 years statute is also defeated by their failure to prove the payment of taxes. These conclusions dispose of appellees' assignments of error complaining of the rulings of the court on the issues of limitation of 3 and 5 years, and the refusal of the court to submit these issues to the jury, and each of these assignments is overruled.

There is no merit in appellees' contention under their fourth cross-assignment, that upon the facts of this case the shortage in the 14 Trott surveys should be apportioned between all of the surveys. From what we have before said on the lack of ambiguity in the description of plaintiff's land, and the insufficiency of the evidence offered by the defendants to show that it was located elsewhere than the field notes place it, and the separate and independent rights under which these locations were made, the rule of apportionment invoked by appellees cannot be applied.

The assignments of error presented by appellant which we have not discussed if sustained would only require a reversal of the judgment and remanding the cause for a new trial, and, in view of our conclusion that under the law and the evidence no other judgment than one in favor of appellant, giving him title and possession of the land claimed by him, can be properly rendered, need not be passed upon.

It follows from these conclusions that the judgment of the court below should be reversed, and judgment here rendered for appellant for all of the land claimed by him, and for rents at the rate and for the time fixed by the agreement set out in the fact findings of the trial court.

That portion of the judgment awarding defendant San Jacinto Rice Company title and possession to the tract of 168½ acres of land on the L. Hemenway scrip 351, which it holds under conveyance from plaintiff, is not appealed from, and is therefore undisturbed. Judgment has been ordered entered as above indicated.

Reversed and rendered.