**KELLY v. WILSON et al.  (No. 8034.)**

(Court of Civil Appeals of Texas. Galveston. May 13, 1921. Rehearing Denied June 9, 1921.)

**1. Partition** ⬅️8—**Description held unambiguous, when applied to circumstances.**

A deed executed in pursuance of an agreement for voluntary partition, which conveyed to plaintiff 200 acres in part of a survey set apart to the heirs of the parties' ancestor, except the portion thereof set apart to defendant and elsewhere described, shown to have been executed shortly after the tract thereby divided between the parties was decreed to the heirs who made the partition, was plain and unambiguous, both on its face and when applied to the circumstances.

**2. Evidence** ⬅️461(3) — **Intention to convey other land inadmissible to contradict unambiguous deed.**

Where a deed effecting a voluntary partition between the parties was unambiguous on its face and when applied to the situation, parol evidence is inadmissible to show that the oral agreement for partition was intended to convey other land, though the deed recited it was executed in pursuance of a partition agreement.

**3. Partition** ⬅️9(2)—**Evidence held not to show intention to convey land other than that described.**

Even if parol evidence were admissible to show the oral agreement for partition effected by a deed reciting it was given in pursuance to an agreement for partition, an oral agreement, made while a suit to determine title to the land was pending, which divided land ultimately not received by the parties to the partition agreement, *held* not the agreement referred to in the deed; but it will be presumed that a subsequent agreement was made after the decision of the suit, in pursuance of which the deed dividing the tract set off to the parties in that suit was executed.

**4. Appeal and error** ⬅️1177(6) — **Judgment cannot be rendered, where evidence shows adverse possession of some land without showing boundaries.**

On appeal from a judgment for defendants in trespass to try title, where the record showed that the plaintiff was the owner of the title to the land in controversy, but that some portion thereof had been claimed and occupied by the defendants for more than 10 years before the suit was filed without showing the boundaries of the portion so occupied, judgment cannot be rendered for the plaintiff, but the cause must be remanded, to have the boundaries of that portion determined.

**5. Adverse possession** ⬅️100(1)—**Possession by record owner of portion of tract extends to all not occupied adversely.**

Where the owner of the record title to land is in actual possession of a portion thereof, his possession extends to all of the tract, except those portions actually occupied adversely.

Appeal from District Court, Madison County; J. A. Platt, Judge.

Trespass to try title by S. H. Kelly against Ella L. Wilson and her husband. Judgment for defendants, and plaintiff appeals. Reversed and remanded, with instructions to render judgment for all the land in controversy, except such portions as defendants may show they have occupied for the period of limitations.

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Dean & Humphrey, of Huntsville, for appellant.

Lewis & Dean, of Navasota, and A. T. McKinney, Jr., of Huntsville, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by appellant against appellee Ella L. Wilson and her husband, J. R. Wilson. The land in controversy is a tract of 200 acres, more or less, a part of the John Montgomery survey in Madison county.

Plaintiff's petition, in addition to the general allegation of fee-simple title, alleges title by limitation of three, five, and ten years. The land sued for is all of a tract of 817 acres, more or less, which is described in the petition by metes and bounds, except 617 acres off the east end thereof. The petition further alleges that the boundary line between the land owned by plaintiff on said 817-acre tract and that owned by defendants has never been fixed and established, and asked that such line be now fixed and established.

The defendants answered by general demurrer, special exception, and general denial, and further pleaded the statutes of limitation of three, five, and ten years. The trial in the court below without a jury resulted in a judgment in favor of the defendants.

It was agreed by all parties that Samuel Calhoun is the common source of title of plaintiff and defendants, and that the parties to the partition deed hereinafter mentioned were the heirs and all of the heirs of said Samuel Calhoun, deceased, at the time of the execution of said partition deed, except Louis Calhoun, and that the said Louis Calhoun received his share of the estate of the said Samuel Calhoun under the will of the latter, and not in the partition. It was further agreed that 10 acres of the John Montgomery headright, being the 10 acres mentioned in the partition deed as being devised in the will of the said Samuel Calhoun to the said Louis Calhoun, is in the forks of the Bedias creek and Trinity river, and that said 10 acres is not claimed by either the plaintiff or defendants in this suit.

By a deed of partition executed by the heirs of Samuel Calhoun on September —, 1888, and duly acknowledged on November 16, 1888, there was conveyed to Mrs. Kate Kelly, whose title plaintiff now holds, among other lands of said estate, a tract described as follows:

"Tract No. 14, 200 acres in Madison county, in said state, being part of the John Montgomery headright in said county, and on the north line thereof, being that part of said Montgomery survey set apart to Samuel Calhoun in the partition between the heirs of John Montgomery and the heirs of Samuel Calhoun, and including all that part of said headright so set apart to said heirs, except 617 acres herein set apart to Mrs. Ella Wilson, and designated as tract No. 18."

This deed conveys to defendant, Mrs. Ella Wilson, among others, the following described tract:

"No. 18, 617 acres in Madison county, in the state of Texas, being part of the John Montgomery headright in said county, including the eastern part of the land owned by the said Calhoun in said headright survey, except a 10-acre survey set apart to Louis Calhoun by the will of said decedent."

This deed recites that a verbal agreement had been made by and between the heirs of Samuel Calhoun in 1874, by which they had—

"partitioned and divided the said lands among themselves, and designated the respective portions of the said lands that each of them should thereafter possess and own; and whereas, said legatees, or the heirs of each of them, have had exclusive possession and control of the respective shares so set apart to them ever since said partition was so made aforesaid."

In 1850 John Montgomery conveyed to Samuel Calhoun two tracts of land in the John Montgomery survey. The first tract, which contains 1,000 acres, extends along the north boundary line of the survey east a distance of 1,918 varas to the northeast corner of the survey on the Trinity river. From the northeast corner the lines of the tract run down the Trinity river and up Bedias creek with their meanders, and then, leaving the creek, the line runs west 3,589 varas, and thence north 1,538 varas, to the place of beginning on the north line of the survey. From this description it is seen that the western portion of this tract is a parallelogram, 1,918 varas in length and 1,538 varas wide. The second tract, which contains 400 acres, is described as beginning at the southwest corner of the 1,000-acre tract; thence west 1,000 varas; thence north to the north boundary line of the survey; thence east with said line to the northwest corner of the 1,000-acre tract; thence south on the west line of said tract to the place of beginning.

In a suit brought by the heirs of John Montgomery against J. M. Wright, executor of the estate of Samuel Calhoun, in the district court of Madison county, the plaintiffs on December 7, 1871, obtained a judgment for an undivided five-twelfths of the two tracts of land of 1,000 and 400 acres, respectively, before described. After adjudging plaintiffs an undivided five-twelfths interest in the land, this judgment further orders and decrees:

"It is therefore ordered that W. M. James, G. T. Rhodes, and J. D. H. Richardson, all of this county, be appointed to survey, plot, and partition said lands by metes and bounds so as to give complainants five-twelfths of said two tracts, having reference to value, quality, and quantity, but irrespective of value enhanced by the improvements, and said Calhoun's inter-

est by consent be set off in a body on the east end of said 1,000-acre tract, so, as to include his improvements, or so much of them as may be on the part allotted to him."

An appeal from this judgment was taken to the Supreme Court, and pending the appeal the record of this judgment was destroyed by fire. The judgment was affirmed by the Supreme Court, and thereafter, on August 10, 1874, on motion of plaintiffs to substitute the record, which was agreed to by the defendant executor, the original judgment was substituted and entered in the minutes of the court. The records of the district court of Madison county do not show any report by the commissioners appointed by the judgment to partition the land, and no further order appears to have been made in the case after the order substituting the original judgment.

The undisputed evidence shows that two of the commissioners named in this judgment, together with the county surveyor of Madison county, made partition of the land in accordance with said judgment, and fixed and established a division line between the land set apart to the Calhoun heirs on the the east end of the 1,000-acre tract and that set apart to the Montgomery heirs. This line is well known and has been recognized as the division line between the Montgomery and Calhoun heirs ever since it was established by said commissioners.

There is evidence showing that, prior to the entry of the substituted judgment in 1874 and the establishment of the division line above referred to, there had been a verbal partition between the Calhoun heirs of the land belonging to the Calhoun estate, and by this partition Mrs. Kelly was given 200 acres in the northwest corner of the 400-acre Montgomery tract before described, and Mrs. Wilson 617 acres out of the north portion of the 1,000 and 400 acre tracts. A plat showing the location of the land as fixed by this partition was in evidence.

Defendant J. R. Wilson testified:

"The verbal partition was made before I married. I know that verbal partition was made before I married, and my wife had been in possession for a year or more of her part. Yes; that is the partition that is reflected on this map that Mr. Wright gave me some time after I married Miss Ella L. Calhoun."

Again:

"I married Miss Ella L. Calhoun on the 26th day of June, 1872, and moved on to this place in September, 1872. * * * It must have been some time about a year after I married. It must have been some time in 1873 or in the spring of 1874. It was after I married that the partition deed was made. That deed was burned in the courthouse here. I have never been able to find it."

Mrs. Kelly took possession of the 200 acres set apart to her in this verbal partition,

erected a house, and placed a tenant therein. After final settlement of the suit of Montgomery heirs against the executor of the Calhoun estate, by which 817 acres off the east end of the 1,000-acre tract was set aside to the Calhoun estate and the division line above mentioned was established, Mrs. Kelly abandoned her possession of the 200 acres in the northwest corner of the 400-acre tract and removed her improvements therefrom. A few acres of this 200-acre tract was inclosed in a field owned by Mrs. Kelly on an adjoining survey, and she seems to have continued to hold possession of this small portion of the land; but the undisputed evidence shows that she never claimed any portion of the 200-acre tract after the final settlement of the Montgomery suit. The undisputed evidence further shows that Mrs. Kelly, prior to her death in 1900, claimed the 200 acres involved in this suit and paid the taxes thereon, and that it has been since continuously claimed and the taxes thereon paid by her heirs and by plaintiff herein. A portion of this land was rented by Mrs. Kelly to Capt. Herring for pasturage purposes, and he fenced it in 1898 or 1899, and continued to hold it under his rent contract and to pay yearly rent therefor until he took charge of the penitentiary in 1907.

After Capt. Herring gave up the pasture, it was rented to J. R. Rhodes, whose possession and occupancy is detailed by him as follows:

"Mr. Herring had the place just before I did. When Mr. Herring was appointed superintendent at the penitentiary, he was going to move to Huntsville, and he called me up and told me that there was a good pasture there; if I wanted it, that I could get it. He was appointed superintendent under Gov. Campbell in 1907. He told me about that pasture before he left. He moved shortly after he was appointed superintendent. Then I wrote to Mr. Kelly, and Mr. Herring wrote to Mr. Kelly. Yes; I paid for it. I was renting it from Mr. Kelly. I never heard of any one else claiming that land while I had it. This pasture went right up to that little field over there. Mr. Kelly told me he was claiming something like 200 acres in there. He spoke to me three different times about fencing the land south of that road. He said he wanted to make a trade with me to fence it. I told him I didn't have time. And then next year I rented it from him again, and he told me again that he wanted to get me to fence it; but we kept putting it off and never did make any trade. While I had that land I was using it as a pasture. I kept the fences up. It was in the agreement that I was to keep the fences and have it for so much money. None of the Wilsons ever had anything to do with that land while I had it."

Defendants have resided on the old Samuel Calhoun homestead on the east end of the 1,000-acre tract ever since their marriage in 1872. They have claimed all of

said tract east of the line fixed as the division line between the Calhoun and Montgomery heirs, and have held actual possession for more than ten years before this suit was filed to some portions of the land claimed by plaintiffs in this suit, but the exact quantity and a definite description of the portions so occupied by them is not shown by the record.

Under appropriate assignments of error the appellant assails all of the material findings of fact and conclusions of law upon which the judgment of the trial court is based. It would serve no useful purpose to set out or discuss the assignments in detail. The judgment is based primarily upon the conclusion that the partition deed between the heirs of Samuel Calhoun did not convey to Mrs. Kelly any portion of the 817 acres of land now claimed by the defendants on the east end of the 1,000-acre tract.

[1] This conclusion cannot be sustained under any recognized rule for the construction of written instruments, nor upon any reasonable inference that can be drawn from the facts shown by the undisputed evidence. The language of the deed is free from ambiguity. It conveys to Mrs. Kelly:

"200 acres in Madison county in said state, being a part of the John Montgomery headright, and on the north line thereof, being that part of said Montgomery survey set apart to Samuel Calhoun in the partition between the heirs of John Montgomery and the heirs of Samuel Calhoun, and including all that part of said headright so set apart to' said heirs, except 617 acres herein set apart to Mrs. Ella Wilson."

This language is plain, and there is nothing in it to raise any doubt or uncertainty as to the location of the land intended to be conveyed. When by the aid of undisputed evidence we seek to apply this description to the land in controversy, no doubt or uncertainty arises as to the identity and location of the land intended to be conveyed. As before shown, the undisputed evidence, a portion of which is a judgment record, shows in the partition between the heirs of John Montgomery and Samuel Calhoun a tract of 817 acres off the east end of a 1,000-acre tract on the John Montgomery head right was set apart to the Calhoun heirs. This 817-acre tract lies along the north line of the Montgomery survey. Mrs. Wilson had her home on the east end of this 817-acre tract at the time this deed was executed, and Mrs. Kelly owned other land adjoining the north line of the Montgomery survey. The tract conveyed to Mrs. Wilson on the Montgomery survey referred to in the description of the tract conveyed to Mrs. Kelly is described as follows:

"617 acres in Madison county, in the state of Texas, being part of the John Montgomery headright in said county, including the eastern part of the land owned by the said S. Calhoun in said headright survey, except a 10-acre survey set apart to Louis Calhoun by the will of said decedent."

The clear and unmistakable purpose and intention of the parties, as expressed in this instrument and interpreted by the situation and circumstances shown by the undisputed evidence, was to convey to Mrs. Wilson 617 acres of the 817-acre tract to include her home on the eastern portion of the tract, and convey to Mrs. Kelly the remainder of the tract adjoining the north line of the survey and near the other land owned by her.

[2] There being no ambiguity on the face of the deed, and none arising when the description therein contained is applied to the land, it is not competent in a suit of this character to show by extrinsic evidence that other land than that described in the deed was intended to be conveyed. Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931; Chew v. Zweib, 29 Tex. Civ. App. 311, 69 S. W. 207; Hamman v. San Jacinto Rice Co., 229 S. W. 1008, recently decided by this court.

[3] But, regardless of this rule, there is no evidence in this case tending to show that the parties to this deed did not intend to convey the land clearly and unambiguously described in the deed. The learned trial judge based his conclusion that this deed did not convey to Mrs. Kelly the land claimed by plaintiff in this suit on the recital in the deed before set out as to the previous verbal partition and the previous possession of and control of the property by the heirs under such partition, and the evidence showing the possession and claim by Mrs. Kelly to the 200 acres in the northwest corner of the 400-acre tract. In reaching the conclusion that this 200 acres was the land intended to be conveyed by the deed, he evidently overlooked the fact that the verbal partition referred to in the deed is there stated to have been made in 1874, and the further fact that the verbal partition under which Mrs. Kelly took possession of the 200 acres on the 400-acre tract is shown by the undisputed evidence, including the testimony of defendant J. R. Wilson, to have been in 1872 or 1871, prior to the final settlement of the suit of the Montgomery heirs before referred to, and that after such settlement Mrs. Kelly abandoned possession and claim to said 200 acres.

At the time this partition deed was executed the Calhoun heirs owned no land in the 400-acre tract, and the only land owned by them on the Montgomery survey was the 817 acres on the east end of the 1,000-acre tract which had been set aside to them by the judgment in the suit just mentioned, and which was clearly referred to and identified by the partition deed. When the verbal partition was made in 1871 or 1872 by the Calhoun heirs, they only partitioned 817 acres, which was seven-twelfths of the 1,400

acres that had been adjudged to them in the suit of the Montgomery heirs; but the 817 acres then partitioned were not taken off the east end of the 1,000-acre tract as the judgment in the suit directed, and it is perfectly apparent from the undisputed evidence that after this judgment was affirmed by the Supreme Court, and the original judgment, which had been destroyed by fire, was substituted, and the 817 acres off the east end of the 1,000-acre tract had been set apart by two of the commissioners of partition, and the line dividing it from the land set aside to the Montgomery heirs fixed and established, the former verbal partition of the seven-twelfths of the 1,400 acres of land on the Montgomery survey owned by the Calhoun heirs, which partitioned portions of the land they were not entitled to under the judgment, was rescinded, and it was agreed that Mrs. Wilson and Mrs. Kelly should take their respective 617 and 200 acres out of the 817 acres designated in the judgment and set aside by the commissioners of partition to the Calhoun estate.

This change in the original agreement for partition in no way affected the other Calhoun heirs, and Mrs. Wilson and Mrs. Kelly each received the same quantity of land that had been given them by the original partition. So far as the balance of the large estate which was partitioned by this deed was concerned, the original verbal partition was apparently confirmed; but there is no room to doubt that there was a second verbal agreement as to the division of this Montgomery land, which partitioned that portion of the land awarded to the Calhoun estate by the final judgment in the suit between it and the Montgomery heirs.

These conclusions require a reversal of the judgment of the court below, and, but for the state of the record upon the issue of limitation, we would here render the judgment that should have been rendered below.

[4, 5] As before pointed out, the evidence shows that some portion or portions of the land conveyed to plaintiff's ancestor by the partition deed has been claimed and occupied by the defendants for more than ten years before this suit was filed. The plaintiff having record title to all of the land claimed by him, and being in actual possession by tenants of a portion thereof, his constructive possession extended to all of the land, except that actually occupied by the defendants. There is no evidence in the record from which we can determine the quantity of land so held by defendants or definitely describe it, and the case must be remanded for further trial on this issue.

It is therefore ordered that the judgment of the court below be reversed, and the cause remanded, with instructions to the trial court to render judgment for the plaintiff for all the land in controversy, except such portion or portions thereof as defendants may show title to under their plea of limitation.

Reversed and remanded, with instructions.